UNITED STATES of America,
Plaintiff–Appellee,

v.

Raymond C. COX, Defendant–Appellant.

No. 89–3308.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1990.

Decided Jan. 22, 1991.

Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

James E. Foster, Funk & Foster, Hammond, Ind., for defendant-appellant.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and SNEED, Senior Circuit Judge.*

BAUER, Chief Judge.

This rather straightforward criminal prosecution raises two troubling issues: a district court's discretion to reject a plea agreement because the defendant will not admit guilt of the crime charged, and the proper procedure for providing to the district court a proffer of evidence of a conspiracy pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978). Although the conduct of this case gives us pause as to both of these issues, we affirm the judgment of conviction.

## I.

The facts here are not especially complex. Basically, Raymond Cox was charged with and convicted for being a small-time drug dealer. The operative indictment alleged conspiracy to distribute cocaine, 21 U.S.C. § 846, and distribution of one-sixteenth of an ounce of cocaine, 21 U.S.C. § 841(a)(1). The indictment also leveled these same charges, and three more, against one Raymond Talley, who pleaded guilty and testified for the Government.

The transaction that gave rise to the charges against Cox and Talley occurred on June 4, 1987. On that date, Talley asked a man who introduced himself as "Rico"—actually, undercover Lake County (Indiana) Narcotics Detective Raymondo Vasquez—if he wanted to buy some cocaine. After discussing price and quantity, Vasquez and Talley went to a bar to find Talley's source. Inside the bar Ray Cox was playing pool. Talley walked up to Cox and asked him if he had any cocaine available for sale. Cox didn't have any with him, but assured Talley that all he needed to do was make a phone call. Talley and Vasquez gave Cox an opportunity to finish his pool game, and then returned to the bar to make the deal.

Talley and Vasquez already had agreed on a price of $150 for one-sixteenth of an ounce of cocaine. Cox wanted the money up front, but Vasquez refused to give any money to these people he didn't know until he saw the drugs. Cox then made the call, and told the person on the other end of the line to give Talley the sixteenth. Cox again asked "Rico" for some front money, assuring him that his "wife" would give the sixteenth to Talley; but Detective Vasquez still refused. On Cox's instructions, Talley and Vasquez then drove to Cox's house. They parked down the street from Cox's house, where Talley demanded half of the money before proceeding further. Vasquez gave Talley $75, after which Talley walked up to Cox's second-floor apartment. Cox's live-in girlfriend answered the door and traded Talley the $75 for a small plastic bag of white powder. Back at the car, Talley exchanged the bag with Vasquez for the remaining $75, plus Vasquez gave Talley an additional $5 "for his troubles." Vasquez then returned Talley to the bar, but not before Talley offered to help Vasquez obtain more cocaine in the future.

---

* The Hon. Joseph T. Sneed, of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

Talley reported back to Cox and handed him the remaining $75.

Detective Vasquez put the unopened plastic bag he received from Talley into a sealed, marked evidence envelope and stored it overnight in a locked cabinet at the Lake County Sheriff's office. The next day, June 5, 1987, Vasquez took the envelope to the Indiana State Police laboratory for analysis. Vasquez retrieved the evidence from the lab on June 16, 1987. He kept the envelope for a short time in the locked cabinet at the Sheriff's office, and then delivered it to the Lake County Police property room for storage. Vasquez resubmitted the sealed envelope to the lab on August 12, 1988, apparently because the chemist who performed the June, 1987 analysis subsequently left the employ of the Indiana State Police. Kristin B. Donley, a forensic drug chemist with the Indiana State Police's Lowell Regional Laboratory, opened the sealed envelope and plastic bag and tested the white powder contained therein on January 17, 1989. Donley determined that the bag contained 1.3 grams of powder that was 74% by weight cocaine, and entered this information on the official report. She then marked and resealed the bag and the envelope. Detective Vasquez picked up the evidence from the lab on June 14, 1989, and returned it to the Lake County Police property room.

In what turned out to be a full-dress rehearsal, the case against Cox was tried to a jury on June 12–15, 1989. After the jury retired to deliberate (and the alternates were sent home), one of the jurors had to be excused for health reasons. The trial judge decided to continue with the remaining eleven, *see* Fed.R.Crim.P. 23(b), but when almost twelve hours of deliberation and several notes back and forth failed to result in a verdict, the court granted the parties' agreed motion for a mistrial.

Shortly after the mistrial, Cox and the Government reached a plea agreement. In exchange for Cox's plea of guilty to the distribution charge, the Government agreed to dismiss the conspiracy charge and to accept a two-year cap on Cox's sentence. For reasons that are more fully discussed below, *see infra* at 523–24, the court rejected the plea agreement and set the matter for a second trial. The Government moved to dismiss the conspiracy count anyway, preferring to go to trial again on only the substantive distribution charge. Without objection from Cox, the conspiracy charge was dismissed. The court then took up various preliminary matters in preparation for the trial, which was to begin in four days. The Government informed the court that it planned to introduce against Cox several statements by Talley, just as it had in the first trial. The Government alleged that the statements were not hearsay but statements by a coconspirator. *See* Fed.R.Evid. 801(d)(2)(E) ("Rule 801(d)(2)(E)"). The Government suggested that it could provide the court with a proffer of evidence concerning the alleged conspiracy, to which the court responded, "[I]f you want to prepare a *Santiago* proffer, I will accept [it] for my review in camera only." Transcript of Proceedings on August 25, 1989 ("Plea Hearing Tr.") at 66.

The second jury trial began on August 29, 1989. Before seating the jury, the court considered motions in limine by both sides. In his three motions in limine, Cox sought to preclude the following pieces of evidence that came out: 1) the drug conspiracy charge to which Talley pleaded guilty also named Cox, 2) Talley's claim in the first trial that he had engaged in drug deals with Cox prior to the transaction on June 4, 1987, and 3) Cox's statement that he had distributed cocaine to his girlfriend on various occasions in the past. The court denied all three motions. As to the first, the court ruled that the Government's right and obligation to enter evidence concerning Talley's plea agreement included the right to explore the details of the charge to which Talley had pleaded guilty. Transcript of Proceedings on August 29, 1989 ("Trial Tr.") at 101–02. As to Cox's second and third motions, the court applied the four-part test for the admission of prior bad act evidence outlined in *United States v. Shackleford*, 738 F.2d 776, 779 (7th Cir. 1984), and concluded that the challenged

evidence was admissible under Fed.R.Evid. 404(b) ("Rule 404(b)"). Trial Tr. at 73–84.

At the same pretrial conference, the court also ruled on the Government's *Santiago* proffer. The court ruled that the in camera proffer, which the court sealed until further notice, was sufficient to allow the conditional admission of Talley's statements as coconspirator statements; the condition being that the Government prove at trial by a preponderance of the evidence that a conspiracy existed, that the statements were made in furtherance of the conspiracy, and that Cox was a member of the conspiracy when the statements were made. Trial Tr. at 91–92. Counsel for Cox objected to the *Santiago* procedure used by the court. He argued that keeping the proffer secret from defense counsel prevented him from mounting an attack on the sufficiency of the proffer and from preparing to defend against the coconspirator statements themselves. *Id.* at 93–97. With this objection noted and rejected, the court proceeded to conduct the voir dire and seat the jury.

The following day, after the Government completed its case-in-chief, the court returned to the *Santiago* issue. The court ruled that the evidence adduced by the Government in its case-in-chief established the requisite elements for the admission of a coconspirator's statement under Rule 801(d)(2)(E). Accordingly, the court changed its conditional admission of Talley's statements to an unconditional one. Trial Tr. at 268. Counsel for Cox contested this finding on the merits, and renewed his objection to the ex parte nature of the procedure as well. *Id.* at 269–73. The court reaffirmed its *Santiago* ruling, and Cox proceeded with his defense case. Later that afternoon, both parties rested and the case went to the jury. After deliberating for about an hour, the jury returned a guilty verdict. The court later entered judgment on this verdict and sentenced Cox to three years imprisonment, to be followed by three years of supervised release.

From that judgment Cox brought a timely appeal.

## II.

■ Two of Cox's challenges to his conviction can be disposed of rather quickly. First, relying on the 13–month "hiatus" between when Vasquez first retrieved the evidence from the lab (June, 1987) and when he resubmitted it for a second analysis (August, 1988), Cox argues that the Government failed to establish a sufficient chain of custody for the cocaine. This contention is frivolous. Detective Vasquez testified that the sealed envelope was stored during this time period at the Lake County Police property room.[1] The envelope did not leave official custody, and we presume that public officials who handle evidence do so properly. *See United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988); *United States v. Olson*, 846 F.2d 1103, 1116 (7th Cir.1988). Further, the testimony of Vasquez and Donley, the lab chemist, demonstrates that this presumption is warranted in this case. Vasquez testified that the marked, sealed evidence envelope he delivered to and retrieved from the lab was the same envelope into which he placed the plastic bag he received from Talley, and that the bag was in the same condition as when he received it from Talley (save the changes and marks made by the lab). Donley similarly verified the identity and security of the bag of powder she tested. What's more, even Cox agrees that there is absolutely no evidence of tampering in this case. Thus, the chain of custody was proved adequately, and the district court did not abuse its discretion in admitting the evidence. *See Lott*, 854 F.2d at 249–51; *Olson*, 846 F.2d at 1116–17.

■ Second, Cox attacks the district court's decision to admit the evidence addressed in Cox's three motions in limine, particularly the prior bad act evidence admitted under Rule 404(b). Cox argues that

---

1. Contrary to the representation by Cox's counsel at oral argument, Vasquez so testified at the *second* trial in August, 1989. *See* Trial Tr. at 221. Thus, we need not and do not rely on testimony and/or evidence adduced at the first trial to dispose of Cox's chain of custody challenge.

the prior act evidence should not have been admitted to show intent, as intent was not in issue; that no other valid basis for admitting the evidence existed; and that the evidence was "vague and uncorroborated." Like most appellants challenging a district court's admission of evidence under Rule 404(b), Cox has failed to establish a clear abuse of discretion sufficient to justify a reversal of his conviction. *See United States v. McAnderson*, 914 F.2d 934, 945–46 (7th Cir.1990); *United States v. Khorrami*, 895 F.2d 1186, 1193–95 (7th Cir.1990). The admission of the evidence concerning Talley's other drug deals with Cox was within the court's discretion because that evidence went to a number of valid purposes, including the following: to establish the context of Talley and Cox's relationship (i.e., why Talley sought out Cox as his source on June 4, 1987), to show Cox's access to quantities of cocaine, and/or to refute Cox's defense theory, which was that he had no part in any drug transaction with Talley and Vasquez. *See United States v. Elizondo*, 920 F.2d 1308, 1320–21 (7th Cir.1990); *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989). The other bad act evidence referred to in Cox's motions in limine—that Cox had provided cocaine for his girlfriend—was not even mentioned at the second trial. Finally, as to Talley's testimony in both trials that he pleaded guilty to a conspiracy charge that also named Cox, the admission of such plea agreement information has been specifically approved by this court. *See, e.g., United States v. McGrath*, 811 F.2d 1022, 1024 (7th Cir.1987).

Cox's remaining challenges merit a more detailed discussion.

## A. The Rejected Guilty Plea

The district court held a hearing on the proposed plea agreement between Cox and the Government on August 25, 1989. Cox was sworn, and the court took him through the agreement line by line to verify that he understood and assented to it. Cox assured the court that he wished to plead

guilty to the distribution count and that he understood all of the rights he waived by doing so. The problem arose when the court inquired of Cox what it was that he did:

Q: Now, Mr. Cox, I want you to tell me what you did in connection with the acts charged in [the distribution count]?

A: What—what it's saying that I did actually—

Q: No, I don't want you to tell me what they are saying you did. I want you to tell me what you did. Do you wish to confer with your attorney?

A: Yes sir. I bought it for my girlfriend. I bought some for my girlfriend and gave it to her a couple of times, but that was it.

And I feel that by taking the plea agreement that it would be taking more—I'd be taking the sentence I feel would be okay for me as far as what I have done wrong, that it was against the law for me to do that.

Q: You bought it for your girlfriend?

A: Yes.

Plea Hearing Tr. at 51–52. At this point, Cox's counsel stepped in and tried to rescue the plea agreement by conducting a direct examination of Cox. This examination revealed that, although Cox believed that all the evidence from his first trial would be entered in the same form in any subsequent trial and that this evidence would almost assuredly result in a guilty verdict on the distribution charge,[2] Cox simply did not agree that "this offense came down the way the Government alleged." *Id.* at 55. Cox continued to admit guilt, however, for distributing cocaine to his girlfriend "on occasion" during 1987.

In light of Cox's testimony, the court indicated that it had difficulty accepting the plea, and heard argument from the parties. Cox's counsel handed the court a copy of *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and argued that it supported the acceptance of Cox's plea. The Government suggested

---

**2.** Indeed, the record reveals that, before the mistrial was declared, the jury in Cox's first trial had come to unanimous agreement as to Cox's guilt on the distribution count.

that Cox "can't bring himself to say he's guilty" of distributing to Vasquez, and agreed that under *Alford* the court could in its discretion accept the plea. Indeed, the Government suggested that this was an "ideal *Alford* plea situation" because the court had all the evidence presented at Cox's first trial as a factual predicate supporting the plea. (Cox's first trial was before this same judge.) After citing the discretion allowed by *Alford* and the fact that Cox had not been charged for distribution to his girlfriend (the only crime of which Cox was willing to admit guilt), the court rejected the plea agreement:

> Without [Cox's admission of guilt of distribution to Vasquez], I do not feel comfortable in finding him guilty, and because as I understand it there has been a denial of guilt of the charges brought against him and the essential elements therein, I cannot accept the guilty plea at this time.

Plea Hearing Tr. at 64.

*North Carolina v. Alford* established that an express admission of guilt "is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." 400 U.S. at 37, 91 S.Ct. at 167. The posture of *Alford* differs from the posture of the instant case, however. There, the state trial court had accepted a plea of guilty to second-degree murder even though the defendant stated, "I ain't shot no man, but I take the fault for the other man.... I just pleaded guilty because they said if I didn't they would [execute] me for it, and that is all." *Id.* at 28 n. 2, 91 S.Ct. at 163 n. 2. The issue in *Alford* was whether the trial court committed constitutional error in accepting the plea under these circumstances. (Since *Alford*, most federal cases that have discussed the *"Alford* plea" situation have focused on the similar issue of whether there was a sufficient factual basis under Fed.R.Crim.P. 11 ("Rule 11") to justify the court's acceptance of the plea. *See, e.g., United States v. Morrow*, 914 F.2d 608 (4th Cir.1990); *United States v. Lumpkins*, 845 F.2d 1444 (7th Cir.1988).) The issue here, in contrast, is whether the district court committed reversible error in refusing to accept an *Alford* plea.

The place to begin in addressing this issue is the *Alford* opinion itself. Although the Court held that the constitution allowed trial courts, provided they had adequate proof of voluntary and knowing waiver, to accept guilty pleas when defendants still claimed innocence, the Court did not hold that the constitution required that action. In fact, the Court expressly left room for the *discretion* of trial courts:

> Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court.... Cf. [Rule 11], which gives a trial judge discretion to "refuse to accept a plea of guilty." We need not now delineate the scope of that discretion.

*Alford*, 400 U.S. at 38 n. 11, 91 S.Ct. at 168 n. 11. *See also Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971) (district court "may reject a plea in exercise of sound discretion"). In subsequent cases, various circuits have undertaken the task eschewed by the Court in *Alford* and explored the scope of this discretion, the majority holding that a district court can indeed reject a guilty plea because the defendant protests innocence. The following passage from *United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971), is illustrative of the reasoning that has led to this result:

> We see at least two reasons why the [trial] court must have discretion whether or not to accept a plea even though a strong case may be made as to its voluntariness. The first is that a conviction affects more than the court and the defendant; the public is involved. However legally sound the *Alford* principle, which of course we do not dispute, the public might well not understand or accept the fact that a defendant who de-

nied his guilt was nonetheless placed in a position of pleading guilty and going to jail....

[Restricting the district court's discretion to reject "*Alford* pleas"] could produce even more direct difficulties. We could not support a principle under which, if the [trial] court refused to accept a plea, the defendant after trial and a conviction and a sentence not to his liking could return and freely litigate the correctness of the court's finding that the requirements of Rule 11 had not been fully met.

*See also United States v. Gomez–Gomez,* 822 F.2d 1008, 1011 (11th Cir.1987); *United States v. O'Brien,* 601 F.2d 1067, 1069–70 (9th Cir.1979).[3]

Surprisingly, this circuit has never before addressed directly the issue of a district court's discretion to reject an *Alford* plea. In *United States v. Delegal,* 678 F.2d 47 (7th Cir.1982), we held that it was an abuse of discretion for the district court to refuse to accept a guilty plea solely because one aspect of the agreement, though it was understood by both parties, was not contained in the written document submitted to the court—a different, but arguably related issue. In *United States v. Davis,* 516 F.2d 574 (7th Cir.1975), we were faced with a standard *Alford* plea case; to wit, the court accepted the guilty plea despite the defendant's refusal to admit the truth of the government's evidence, and the defendant was claiming on appeal insufficient factual basis to satisfy Rule 11. We held in *Davis* that it was proper for the court to accept the defendant's plea, but after so holding we stated the following dicta, seized upon by Cox to support his argument that the court in the instant case was required to accept his plea:

We do not say that it will always be an abuse of discretion to refuse to accept a guilty plea when the defendant denies his guilt, even though a factual basis for the plea is established and the requirements

of Rule 11 have otherwise been satisfied.... There may be circumstances we cannot now foresee that will present adequate reasons for the judge to conclude that acceptance of the plea is not in the interest of justice in that case.... But ordinarily when there is strong evidence of guilt and the defendant, with an understanding of the charge and the consequences of his plea and with the advice of competent counsel, wants to plead guilty although he will not admit the facts that show his guilt, he is entitled to plead guilty.

516 F.2d at 578.

Whatever the descriptive accuracy of this dicta concerning what "ordinarily" happens in *Alford* plea situations, we hold today that nothing in *Davis* or any other controlling precedent precludes a district court, in the exercise of its sound discretion and in a appropriate case, from rejecting a plea allowed by *Alford.* We hold further that the instant case is such an "appropriate case."

■ As both parties suggested at the plea hearing, it was true in this case that the court would have been within its discretion to accept Cox's plea. The court had before it the entire body of evidence adduced at the first trial; certainly a sufficient factual basis to satisfy Rule 11. Cox himself agreed that the Government's proof was strong, and believed that it would likely result in a conviction. It was that belief that motivated him to knowingly and voluntarily waive his right to trial in return for the assurance of a sentence of only two years. Thus, the requirements of *Alford* were satisfied as well. But the court also was faced with a defendant who, despite all that, continued to protest his innocence of the crime charged, a real "danger signal." *Davis,* 516 F.2d at 578. Even more, Cox's statements raised the specter that he was pleading to one crime in order to assuage his guilt for a different, uncharged crime. Thus, the district court

**3.** A case in counterpoint is *United States v. Gaskins,* 485 F.2d 1046, 1048 (D.C.Cir.1973), wherein the court held that the district court abused its discretion when it rejected a guilty plea solely because the defendant refused to admit that

he committed the offense charged. We join with the First Circuit in rejecting the *Gaskins* court's view of the discretion of district courts as unduly restrictive. *See United States v. Biscoe,* 518 F.2d 95, 96 (1st Cir.1975).

was faced with precisely the kind of systemic legitimacy concerns mentioned by the *Bednarski* court in the above-quoted passage. In these circumstances, the court acted within its discretion in rejecting the guilty plea and forcing the Government to convince the jury of Cox's guilt of the crime charged.[1]

## B. The *Santiago* Procedure

As in most drug prosecutions, the Government here wished to (and did) offer against the defendant incriminating statements made by his alleged coconspirator. Although by the time of the trial in this case the Government had dropped the conspiracy charge against Cox, it is not a condition for the admission of coconspirator statements under Rule 801(d)(2)(E) that the defendant be on trial for a conspiracy charge. *See, e.g., United States v. Santiago,* 582 F.2d 1128, 1130 (7th Cir.1978). It is a condition for the admission of such statements, however, that the Government provide sufficient evidence to convince the court, as a preliminary matter (see Fed.R. Evid. 104(a)), that it is more likely than not that 1) a conspiracy existed, 2) the defendant and the declarant were members thereof, and 3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy. *Santiago,* 582 F.2d at 1134–35.

In *Santiago,* we reaffirmed that the evidence as to these elements can be submitted to the court by way of proffer before trial, and the court can admit the statement(s) subject to its later determination that, based on all of the evidence admitted at trial, the Government has proved by a preponderance of that evidence all three requisite foundational elements. *Id.* at 1131.[5] We also have approved other procedures a district court can employ in making the preliminary admissibility determination required by *Santiago,* including the following: the court can rule on each statement as it is elicited based on the evidence the Government has adduced to that point; the court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so proving being a possible mistrial); or the court can hold a "full blown" preliminary hearing to consider all evidence concerning the statements. *United States v. Andrus,* 775 F.2d 825, 836–37 (7th Cir.1985) (we discouraged the latter as inefficient and potentially duplicative). By way of guidance in choosing among these methods, we have suggested that "a preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the co-conspirator rule [before delving into the evidence at trial]." *United States v. Shoffner,* 826 F.2d 619, 630 (7th Cir.), *cert. denied sub nom. Stange v. United States,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987).

The district court in this case permissibly chose to conduct the *Santiago* inquiry by way of pretrial proffer, conditional ruling, and then ultimate ruling at the close of the Government's case. The problem lies in the fact that, pursuant to an apparent blanket policy (for there was no reason given here), the court received the preliminary proffer of evidence from the Government ex parte, sealing it from the defendant's counsel up through the oral argument before this court. Nothing in *Santiago, Andrus, Shoffner,* or any other case can reasonably be read to require, or even invite, such a procedure. It is therefore not surprising that, according to our experience and to the representations at oral argu-

---

**4.** We reject Cox's argument that the court failed to state adequately his reasons for rejecting the plea. The district court's colloquy with the parties and clear statement of its holding, all on the record, have provided this court with a record sufficient to allow an "intelligent review" of the court's exercise of discretion. *Davis,* 516 F.2d at 578.

**5.** In addition, after *Bourjaily v. United States,* 483 U.S. 171, 176–81, 107 S.Ct. 2775, 2779–82, 97 L.Ed.2d 144 (1987), the court may consider the very statement(s) the admission of which is sought by the Government in deciding whether these foundational elements have been met. *See United States v. Hooks,* 848 F.2d 785, 795–96 (7th Cir.1988). *But see United States v. de Ortiz,* 907 F.2d 629, 636–38 (7th Cir.1990) (Bauer, C.J., dissenting).

ment by both counsels, very few courts have such a policy. In fact, we were told that, in the Northern District of Indiana, only the two judges in the Hammond Division require ex parte *Santiago* proffers.

*Santiago* proffers are, by nature and necessity, argumentative and summary. They should, of course, be examined in camera, and the district court need not conduct a "full blown" hearing on the proffer wherein the defendant is given an opportunity to contest the veracity of the evidence contained therein. *See Andrus,* 775 F.2d at 836. Granted all of this, we see no principled reason why a court should *as a matter of course* require the Government to present all *Santiago* proffers ex parte, sealing them from defense counsel.[6] Allowing sealed proffers when there exists a reasonable justification for them (i.e., danger or threat to confidential cooperating witnesses or sources) is one thing; but a blanket policy that requires sealed, ex parte proffers—and that therefore forecloses defense counsels from making an argument concerning the sufficiency of the Government's evidence on the foundational requirements before the statements are heard by the jury—is quite another.

Notwithstanding our concern and bewilderment over this district court's policy for the review of *Santiago* proffers, we are confident that its application in this case has not resulted in error sufficient to merit a reversal of Cox's conviction. This was Cox's second trial. Cox's counsel candidly admitted at oral argument that the Government introduced no evidence at this trial—either in support of the admission of Talley's statements or otherwise—that was not previously introduced in the first trial. Indeed, a review of the *Santiago* proffer the Government submitted in this case reveals that it merely contains a summary of Detective Vasquez's testimony from the first trial. Thus, Cox had full notice as to the evidence the Government would offer on the foundational elements for admission of Talley's statements under Rule 801(d)(2)(E), and was not prejudiced by the ex parte nature of the proffer. In fact, the notice in this case was sufficient to provide Cox's counsel the ammunition necessary to contest the admission of the statements as early as his pretrial motions, and to continue to contest their admission up through the court's ultimate Rule 801(d)(2)(E) ruling at the close of the Government's case.

One final point merits brief mention. As he did at various stages in the district court proceedings, Cox again attacks the foundation the Government provided for the admission of the statements in question. Specifically, Cox argues that the Government failed to show that Talley's statements to Vasquez concerning prices and quantities of cocaine and his close relationship with a major source of cocaine (Talley's main source was not Cox), and his offer to provide more cocaine in the future, were in furtherance of a conspiracy of which Cox was a member. After reviewing all of the evidence, the district court ruled to the contrary. Our review of the same evidence convinces us that the court's *Santiago* determination was not clearly erroneous. *See United States v. Molinaro,* 877 F.2d 1341, 1345 (7th Cir. 1989); *Shoffner,* 826 F.2d at 627–28. Talley's statements of solicitation, his discussions of price, his reassurance as to the stature of his source, and his offer of future drug-provision services are classic examples of statements made to conduct and further the business of a drug conspiracy. *See Molinaro,* 877 F.2d at 1345 (citing *United States v. Mealy,* 851 F.2d 890, 901 (7th Cir.1988)). Further, there was abundant evidence that, although Cox may not have been Talley's source of first choice, he was a member of the drug distribution conspiracy to which Talley also belonged.

### III.

For the foregoing reasons, Appellant Cox's conviction is

AFFIRMED.

---

6. We stress that this practice indeed appears to be mandatory in this district court; the Government's trial counsel in this case offered to present the proffer orally at the pretrial conference, but the court instructed him to submit a document in camera and under seal.