**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Carlos RODRIGUEZ, Defendant–Appellee.**

**No. 92–1325.**

United States Court of Appeals, Seventh Circuit.

Argued April 29, 1992.

Decided Sept. 18, 1992.

James P. Fleissner, Asst. U.S. Atty., Susan E. Cox, William D. Shaver, Asst. U.S. Atty. (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, for plaintiff-appellant.

Marvin Bloom (argued), Chicago, Ill., for defendant-appellee.

Before CUMMINGS, COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

COFFEY, Circuit Judge.

A grand jury indicted Carlos Rodriguez, Cesar Hernandez, and Julio Gil for conspiracy to distribute five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. In a pretrial order, the district court ruled that statements made by Hernandez and Gil could not be admitted against Rodriguez because the Government had not presented sufficient evidence to demonstrate that Rodriguez was a member of the charged drug conspiracy. The Government, pursuant to 18 U.S.C. § 3731, interlocutorily appeals this ruling. We reverse and remand for trial.

I.

Under Fed.R.Evid. 801(d)(2)(E), a "statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." In *United States v. Santiago*, 582 F.2d 1128, 1130–31 (7th Cir.1978), we held that when a statement of a coconspirator which would otherwise be regarded as hearsay is proffered by the Govern-

ment, Fed.R.Evid. 104(a)[1] requires that the district court make a preliminary determination regarding the admissibility of the declaration of the coconspirator. In *Santiago* we also made clear that as a condition for admission of such statements, the Government must provide sufficient evidence to convince the district court, by a preponderance of the evidence (i.e. it is more likely than not), that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement(s) sought to be admitted were made during and in furtherance of the conspiracy. *Id.* at 1134. *See also United States v. Cox*, 923 F.2d 519, 526 (7th Cir.1991). "[T]he court may consider the very statement(s) the admission of which is sought by the Government in deciding whether these foundational elements have been met." *Cox*, 923 F.2d at 526 n. 5 (citation omitted). In *Santiago*, we also stated that the Government may submit evidence of these elements in a pre-trial proffer, and the district court may admit the statement(s) subject to its later determination during trial that the Government has established by a preponderance of the evidence the three foundational elements. 582 F.2d at 1131; *Cox*, 923 F.2d at 526. These evidentiary submissions are known as *"Santiago* proffers." Although we have approved "other procedures a district court can employ in making the preliminary admissibility determination required by *Santiago"*, *Cox*, 923 F.2d at 526 (describing alternate procedures), we have suggested that the use of pre-trial *Santiago* proffers can be an efficient method of making the preliminary Fed.R.Evid. 801(d)(2)(E) determination, *United States v. Shoffner*, 826 F.2d 619, 630 (7th Cir.) *cert. denied sub. nom. Stange v. United States*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987).

In the instant case, the district court examined two *Santiago* proffers submitted on behalf of the Government. In their first submission, the Government informed the district court that it would present evidence of the following events: On August 29, 1991, "a cooperating individual ('CI'), who will testify at trial, spoke to defendant Cesar Hernandez about completing a six kilogram cocaine transaction for $21,500 per kilogram." After this conversation, the CI and Cesar Hernandez had a series of taped telephone conversations about the time, place, and quantity of the narcotics transaction. On September 6, 1991, Hernandez and the CI met at a restaurant on Lawrence and Western Avenues in Chicago. Hernandez informed the CI that "his people would bring the six kilograms shortly and would page Hernandez as soon as they were ready." Thirty minutes later, Hernandez made a call from the pay phone located on Lawrence Avenue hoping to determine the cause of the delay. After the call, Hernandez told the CI that [Hernandez'] nephew would deliver five kilograms to a location nearby, and would bring the remaining one kilo later. Hernandez then told the CI that they were to go to an apartment located on Artesian Avenue to complete the transaction. After reaching the Artesian Avenue address, Hernandez and the CI entered a basement apartment to await the delivery of the cocaine. A Mexican male, who, the Government states in its brief, was Hernandez' first source of cocaine, arrived at the basement apartment first. However, this man demanded to see the money for the six kilograms of cocaine before proceeding further. Shortly after he left, another individual, later identified as Gil, came to the apartment, and said that he had the five kilograms. Hernandez ordered him to get the drugs. Gil was next observed apparently placing a beeper call. Shortly afterwards, Rodriguez brought a car around to the intersection of Lawrence and Artesian and picked up Gil. Gil took a leather bag from the trunk of the car and brought it to the basement apartment. All this activity was observed by Government law enforcement agents.

1. Fed.R.Evid. 104(a) provides in pertinent part: "... Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court.... In making this determination it is not bound by the rules of evidence except those with respect to privileges."

After reviewing this first evidentiary proffer, the district court ruled, in a written order, that the statements made by Hernandez and Gil concerning the drug transaction could be admitted against Hernandez and Gil, but not against Rodriguez. The district court explained:

"[t]he government seeks to offer into evidence a tape recorded conversation between the confidential informant ('CI') and Hernandez in which Hernandez told the CI that his nephew would bring five kilograms of cocaine to a nearby location. The government did not show by competent evidence the identity of the nephew. In fact, Rodriguez strenuously argues that he is not the nephew of Hernandez nor has he ever been related to Hernandez. This coconspirator statement is accordingly not admissible against Rodriguez without some further showing by the government that Rodriguez is the nephew of Hernandez. While this statement would otherwise be admissible under [Fed.R.Evid. 801(d)(2)(E)], there is simply insufficient identification to admit this statement against Rodriguez at this time. Therefore, the government is ordered to submit an amended *Santiago* proffer, if any, on or before February 3, 1992."

The Government then proceeded to submit an amended proffer. In it, the Government described the following additional evidence: Hernandez had informed the CI that he expected a multi-kilogram delivery of cocaine from Miami, Florida. On the day of the delivery, September 6, 1991, Hernandez identified two potential sources for the cocaine while he and the CI were waiting for delivery. Because the first source delayed the delivery of the drugs that day, Hernandez contacted a second source. He later stated that his nephew would bring the drugs to an address on Artesian Avenue. The CI and Hernandez walked to the Artesian apartment. While they were there, an individual [the Mexican male described in the first *Santiago* proffer as the initial drug source], arrived at the apartment. Hernandez sent him away when he insisted on seeing the money before delivering the drugs. Shortly thereaf-

ter, Gil, who is in fact Hernandez' nephew, arrived at the Artesian Avenue apartment in a car driven by Rodriguez. The car had no license plates, was registered to a California resident and did not belong to Rodriguez. Rodriguez is a Miami resident who arrived in Chicago shortly prior to the drug transaction, and acquired a beeper prior to the drug transaction. He drove the car containing the cocaine that was subsequently delivered to the CI and Hernandez at the Artesian address in a manner that indicated the employment of counter-surveillance techniques. These techniques included the parking of the car a block away from the Artesian residence in an alley after dropping Gil off, despite the fact that there were empty parking spaces in front of the Artesian Avenue location. The Government asserts that its agents observed Gil emerge from the apartment and briefly use a pay phone. They next observed Gil dialing, but not speaking into the phone, consistent with using a phone to page a beeper. Shortly after Gil placed the call, Rodriguez drove up to the pay phone in the car and picked up Gil. Rodriguez was equipped with a beeper when he was arrested. After picking up Gil, Rodriguez then returned to the alley and remained seated in the vehicle while Gil removed the drugs from the trunk of the car and delivered them to Hernandez. Hernandez, when arrested, was found to be carrying Rodriguez' Miami, Florida phone number in his wallet.

This second evidentiary proffer made clear that the Government did not contend that Rodriguez is Hernandez' nephew. Instead, the Government maintained that Rodriguez was the Miami drug source identified by Hernandez.

Despite the additional evidence implicating Rodriguez described in the Government's second *Santiago* proffer, the district court ruled that "as the government had not made a sufficient showing in its amended *Santiago* proffer of the admissibility of coconspirator statements against Rodriguez pursuant to [Fed.R.Evid. 801(d)(2)(E)], these statements are not admissible against Rodriguez." The district

court provided no further explanation for its ruling, which the Government appeals.

## II.

■ We must address two preliminary questions before reaching the merits of the Government's appeal. Initially, Rodriguez contends that the court lacks jurisdiction to consider this appeal. We disagree. Title 18, U.S.C. § 3731, provides, in part, that,

"[a]n appeal by the United States shall lie to a court of appeals from a decision or order of a district courts (sic) suppressing or excluding evidence ... in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial *proof* of a fact material in the proceeding."

Rodriguez contends § 3731 jurisdiction does not lie for two reasons. First, in a half-sentence argument, he contends that the contested "evidence does not provide substantial proof of a fact material to the proceeding, as the government can certainly use other related conduct to try to establish the conspiracy." Appellee's Brief at 15. We find this argument to be without merit. The statements the Government seeks to introduce against Rodriguez describe the particulars of the drug transaction, including Rodriguez' participation therein, and identify the source of the illegal drugs as being from Miami. These statements clearly qualify as substantial proof of facts material to the proceeding.

■ In Rodriguez' second jurisdictional argument, he apparently maintains that interlocutory appeals, such as the instant one, are prohibited by 28 U.S.C. § 1291, which provides, in part, that "courts of appeals ... shall have jurisdiction of appeals from all *final* decisions of the district courts of the United States...." (emphasis added). Accepting Rodriguez' argument would require us to read out of § 3731 the provision, excerpted above, expressly authorizing interlocutory appeals of district court decisions or orders suppressing or excluding evidence. We thought we made clear in *United States v. White*, 743 F.2d 488, 493 (7th Cir.1984), that the

"Government may appeal interlocutorily in criminal cases under 18 U.S.C. § 3731 but that right is limited to *orders of suppression or exclusion of evidence* or similar rulings. The rationale underlying the statute is that where evidence should not have been excluded but because of its unavailability there could be an acquittal with the Government never being able to raise the question by virtue of its inability to appeal."

(emphasis added). Section 3731 thus operates to create exceptions to the finality requirement of § 1291. As the Eleventh Circuit has noted, § 3731 "can, and does, make it lawful for the government to take certain appeals even though there is no final judgment. For example, section 3731 expressly authorizes the government to appeal interlocutory suppression orders under certain circumstances." *United States v. Martinez*, 763 F.2d 1297, 1308 n. 10 (11th Cir.1985). *See also United States v. Singer*, 943 F.2d 758 (7th Cir.1991) (Government filed successful interlocutory appeal, pursuant to § 3731, of district court's pretrial ruling suppressing evidence seized by police during a search); *United States v. Verrusio*, 742 F.2d 1077, 1078 (7th Cir. 1984) (section 3731 allows interlocutory appeals by the United States from district court orders suppressing evidence). We have jurisdiction to hear this appeal.

■ The second preliminary question we need address is the appropriate standard of review. Rodriguez argues that we should review the district court's Santiago ruling only for clear error. Under this standard, the decision of the district court will be reversed only if we are left "with the definite and firm conviction that a mistake has been committed." *United States v. White*, 903 F.2d 457, 460 (7th Cir.1990) (citation omitted). The Government proposes that we employ "a less deferential standard of review," apparently urging us to review the district court's ruling *de novo*.

Our prior cases make clear "[w]e analyze 'Santiago findings' under the 'clearly erroneous' standard." *Shoffner*, 826 F.2d at 627. *See also United States v. Brown*, 940 F.2d 1090, 1093 (7th Cir.1991) ("We review a district court's findings that the requirements of Rule 801(d)(2)(E) were met under a clearly erroneous standard."); *United States v. Arvanitis*, 902 F.2d 489, 500 (7th Cir.1990) (same); *United States v. Kaden*, 819 F.2d 813, 819 (7th Cir.1987) (same); *United States v. Castillo*, 814 F.2d 351, 354 (7th Cir.1987) (same); *United States v. Andrus*, 775 F.2d 825, 840 (7th Cir.1985) (same). However, the Government contends that the clearly erroneous standard has been applied to *Santiago* findings on appeal only *after* the trial of the case when the district court has had the opportunity to listen to the witnesses and examine and weigh the evidence and testimony presented at trial. By contrast, the Government points out, in the instant case the district court has merely reviewed the two *Santiago* proffers submitted for its consideration. Therefore, the Government insists, this Court is in as good a position as the district court to examine the sufficiency of the two proffers and thus should give little—if any—deference to the district court's ruling.

We have been unable to find any case in this or other circuits expressly considering or delineating the appropriate standard of review applicable to a district court's finding, based solely on evidentiary proffers submitted by the Government, that alleged coconspirator statements are not admissible against the defendant under Fed. R.Evid. 801(d)(2)(E).[2] Rodriguez cites *United States v. Perry*, 624 F.2d 29, 30 (5th Cir.1980) in an attempt to counter the Government's argument. In *Perry*, the Fifth Circuit applied a clearly erroneous standard in reviewing a district court's pretrial decision to bar the admission of state-

ments by the defendant's alleged coconspirators. The Fifth Circuit termed the coconspirator issue "a factual determination, which includes both a quantitative and qualitative evaluation of the evidence." *Id.* The Government distinguishes *Perry* by pointing out that in that case the district court conducted a pre-trial evidentiary hearing to determine the admissibility of the coconspirator statements.

This distinction the Government draws between *Perry* and the instant case brings into focus the consequences of adopting the position the Government urges. As we observed above, trial courts are free to employ several different procedures to determine whether coconspirator statements are admissible under Fed.R.Evid. 801(d)(2)(E). One method we have expressly approved, and the one chosen by the court in the instant case, is to make a preliminary determination, based on Government proffers of evidence, whether to conditionally admit the statements subject to a reevaluation at trial if the Government fails to provide evidence supporting the assertions contained in its proffer. However,

"[w]e have also approved other procedures a district court can employ in making the preliminary admissibility determination required by *Santiago*, including the following: the court can rule on each statement as it is elicited based on the evidence the Government has adduced to that point; the court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so proving being a possible mistrial); or the court can hold a 'full blown' preliminary hearing to consider all evidence concerning the statements. *United States v. An-*

2. In *United States v. Layton*, 720 F.2d 548, 555–56 (9th Cir.1983), *cert. denied*, 465 U.S. 1069, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984), a case arising under § 3731 jurisdiction, the court reversed the district court's pre-trial decision, based on offers of proof, barring certain statements under Fed.R.Evid. 801(d)(2)(E), holding that the district court erred in ruling that the government had not demonstrated that the statements were made in furtherance of the charged conspiracy. In *Layton*, the government urged the court to apply a *de novo* standard in reviewing the district court decision, *id.* at 556 n. 4, but the court did not reach the question because it held that the "under any standard the [district] court erred," *id.* at 556.

*drus*, 775 F.2d 825, 836–37 (7th Cir.1985) (we discouraged the latter as inefficient and potentially duplicative). By way of guidance in choosing among these methods, we have suggested that 'a preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the co-conspirator rule [before delving into the evidence at trial].' " *Cox*, 923 F.2d at 526 (citation omitted). Under the Government's proposed approach, based as it is on applying *de novo* review only when the district court has not conducted an evidentiary hearing or received any testimony at trial, we would review the district court's *Santiago* findings *de novo only* when the court chose what we have described as "a preferable procedure." In all other instances, the district court's ruling would be subject to review for clear error only. It seems perverse to apply the more searching review only when the district court has chosen a method we have expressly approved of as efficient, especially if the district is free to employ any one of several other procedures which are indisputably reviewable for clear error only. We think the better approach is to review all district court rulings of the admissibility of coconspirator statements for clear error only, including when presented with the question in the form of an interlocutory appeal by the Government of a district court ruling based exclusively upon an examination of *Santiago* proffers.

The reasoning of *United States v. Pace*, 898 F.2d 1218, 1226 (7th Cir.), *cert. denied sub. nom. Cialoni v. United States,* —— U.S. ——, 110 S.Ct. 3286, 111 L.Ed.2d 795 (1990) supports this conclusion. In *Pace*, we considered the appropriate standard of review for district court determinations whether to hold an evidentiary hearing to allow a defendant to challenge a warrant affidavit's truth. In making this determination, the district court in *Pace* had examined documentary evidence submitted by the defendant and heard oral argument on the question. *Id.* The defendant, seeking to overturn the district court's finding that he had not made a sufficient showing through his proffer to merit an evidentiary hearing, argued that since the district court's decision involved no credibility determinations, this Court was in as good a position as the district court to decide the issue. *Id.* at 1227. In rejecting the defendant's argument and adopting a clearly erroneous standard of review, we observed that

"deferential review does not depend merely on the district court's ability to view witnesses and judge their credibility. Determining the proper standard of appellate review also requires us to examine the different roles of the district and appellate courts, and the efficient use of judicial resources, which includes the rational division of labor between the district and appellate courts."

*Id.* We reasoned that in determining whether to hold a hearing, the district court had sorted through the materials the defendant submitted, weighed the possible inferences those materials raised, and determined the likelihood that the affiant had lied in his warrant. *Id.* We described this procedure as involving "essentially the same process as fact-finding." *Id.* In another context, we have written that

"[f]act-intensive disputes, those whose resolution is unlikely to establish rules of future conduct, are reviewed under a deferential because the role of appellate courts in establishing and articulating rules of law is not at stake. District judges have the best information about the patterns of their cases, information appellate judges could only duplicate at great cost in time. . . . Even when the dispute may be resolved by examining documents, the claim that the court of appeals is in as good a position as the district judge to review a written record disregards the division of labor (why should three judges redo the work of one?), the sense of the situation that is valuable on all occasions, and the fact that having redone all of the work the court of appeals would not produce a valuable precedent."

*Mars Steel Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 933–34 (7th Cir.1989).

All these considerations lead us to conclude that district court findings under Fed.R.Evid. 801(d)(2)(E) based on pre-trial *Santiago* proffers should be reviewed under a clearly erroneous standard. The trial court is in the best position to sort through the Government's proffered evidence and make the necessary inferences to determine whether the 801(d)(2)(E) standard has been met. The resolution of these questions necessarily turn on the specific factual circumstances of each case, and thus appellate court precedents will be of limited value in guiding future determinations. Moreover, as we made clear above, we see no reason to accord 801(d)(2)(E) determinations less deference simply because the district judge chose to make the determination based on pre-trial proffers rather than after an evidentiary hearing or during trial. That said, we emphasize that review for clear error does not mean no review at all. If we are left with a "definite and firm conviction that a mistake has been committed," *White*, 903 F.2d at 460, we will reverse the decision of the trial court to suppress the coconspirator statements.

### III.

■ Having determined the appropriate standard of review, we turn to the merits of the Government's appeal. The Government's first *Santiago* proffer persuaded the district court, as reflected by its initial order ruling that the coconspirator statements could be admitted against Hernandez and Gil, that it was more likely than not that a drug conspiracy existed, that Hernandez and Gil were members of the conspiracy, and that the proffered statements were made in furtherance of the conspiracy. *See Cox*, 923 F.2d at 526. The district court's ruling barring admission of the statements against Rodriguez rested on its belief that the Government's first *Santiago* proffer did not establish that it was more likely than not that Rodriguez was also a member of the drug conspiracy. The district court explained that it reached this conclusion because it was not persuaded that Rodriguez was Hernandez' nephew, which it believed to be the Government's position.

In its second *Santiago* proffer, the Government made clear that it was not arguing that Rodriguez was Hernandez' nephew; in fact it made clear that *Gil* was Hernandez' nephew. Instead, the Government explained, it believed that Rodriguez was the Miami drug source to which Hernandez had referred in one of the alleged coconspirator conversations. After this clarification, the district court, without explaining its reasoning, merely reaffirmed its ruling that the coconspirator statements could not be admitted against Rodriguez.

In order to have the coconspirator statements admitted against Rodriguez under Fed.R.Evid. 801(d)(2)(E), the Government was required to demonstrate that it was more likely than not that Rodriguez was a member of the conspiracy. *Andrus*, 775 F.2d at 835. In order to make this showing, the Government had to establish, by a preponderance of the evidence, that Rodriguez "intended to join and associate himself with [the conspiracy's] criminal design and purpose." *United States v. Moya–Gomez*, 860 F.2d 706, 758 (7th Cir.1988). "The government must do more than simply show that the defendant associated with the conspirators." *United States v. Van Daal Wyk*, 840 F.2d 494, 498 (7th Cir.1988). However, although the defendant's presence at the scene is "insufficient to sustain conviction for conspiracy, it may nonetheless make participation in the conspiracy ... 'more likely than not.'" *Kaden*, 819 F.2d at 819–20 (quoting *United States v. Dalzotto*, 603 F.2d 642, 645 (7th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979)).

Our review of the Government's two *Santiago* proffers leaves us convinced that the trial court committed clear error when it ruled that the Government had not demonstrated that it was more likely than not that Rodriguez was a member of the alleged conspiracy. As described in the evidentiary proffers, Hernandez stated to the CI that he expected a shipment of cocaine from Miami. Rodriguez was a Miami resident who had recently arrived in Chicago; Hernandez kept Rodriguez' name and Miami address in his wallet. Rodriguez ap-

peared, along with Hernandez' nephew Gil, at the prearranged location (the Artesian address) of the drug transaction with cocaine in the trunk of the car he was driving. The car had no license plates, did not belong to Rodriguez, and was registered to a California resident. Rodriguez remained in the car several minutes, with five kilograms of cocaine in the trunk, while Gil entered the Artesian residence to inform Hernandez that the cocaine had arrived. Rodriguez originally parked the car in an alley despite the availability of parking spaces in front of the apartment house. This behavior, as the Government suggests, gives rise to a reasonable inference that Rodriguez was engaged in a form of "counter-surveillance", i.e. ensuring that he was not an easy target for anyone who might attempt to remove the cocaine without his consent. Moreover, as we stated in *United States v. Perry*, 747 F.2d 1165, 1169 (7th Cir.1984), "it strikes us as incredible that [a drug dealer] would have a person accompany him to a drug deal ... where the person did not have the [drug dealer's] utmost trust and confidence." Here, Rodriguez was left by Gil at the wheel of a car with five kilograms of cocaine priced at $21,500 per kilogram in the trunk. "Judges in the federal system, whether they are in the trial or appellate system, do not operate in a vacuum, shielded from knowledge of drug operations in the real world ..." *Id.* That Rodriguez remained alone in the car with the five kilograms of cocaine is strongly suggestive that he was a trusted member of the drug conspiracy.

When Gil left the apartment after informing Hernandez that the cocaine had arrived, he placed a call from a pay phone, but surveillance agents did not observe him speaking, suggesting that he may have dialed the number of a telephone beeper. Almost immediately after Gil placed the telephone call, Rodriguez appeared near the phone booth to pick Gil up, again in all probability responding to the beeper call. Rodriguez was in possession of a telephone beeper when he was arrested. We, along with several other circuits, have recognized the "role that beepers often play in the conduct of illegal drug trade." *United States v. Solis*, 923 F.2d 548, 550 nn. 3, 4, 551 (7th Cir.1991). After picking up Gil, Rodriguez drove back to the alley and waited until Gil had unloaded the cocaine from the trunk. Gil re-entered the basement apartment carrying the drugs. Shortly afterwards, Rodriguez and Gil were arrested.

We reject Rodriguez' argument that the instant case is similar to *United States v. Williams*, 798 F.2d 1024, 1029 (7th Cir. 1986), in which we held that evidence presented in a *Santiago* hearing was insufficient to establish that it was more likely than not that the defendant was a member of the drug conspiracy. We reached this result in *Williams* after concluding that the Government had been able to show only that the defendant associated with the coconspirators and that she was merely present during a drug transaction. *Id.* at 1028. However, we expressly stated that if the facts had shown the defendant's "presence *plus* suspicious circumstances suggesting membership in the conspiracy" then the coconspirator statements would have been properly admitted. *Id.* at 1028.

In the instant case, as we made clear above, "suspicious circumstances" abound. In isolation, any one of the facts described in the Government proffers might conceivably be dismissed as mere coincidence. Considering the proposed evidence in total, it more than represents the sort of suspicious circumstances that convince us that the district court committed clear error when it ruled that the Government had not demonstrated, by a preponderance of the evidence,[3] that Rodriguez was an active member of the charged drug conspiracy.

## IV.

The Government's two *Santiago* proffers established that it was more likely than not that Rodriguez was a member of

---

3. In contrast, "when a criminal defendant raises a sufficiency of the evidence challenge to a ... conspiracy *conviction,* the correct standard of review is substantial evidence." *United States v. Durrive,* 902 F.2d 1221, 1229 (7th Cir.1990) (emphasis added).

the charged drug conspiracy. Thus, we REVERSE the district court's order barring the admission against Rodriguez of the coconspirator statements the Government sought to introduce against him. If this case proceeds to trial, the district court shall allow the coconspirator statements to be *conditionally* admitted against Rodriguez "subject to the [the court's] later determination that, based on all the evidence admitted at trial, the Government has proved by a preponderance of that evidence" that "1) a conspiracy existed, 2) [Rodriguez and the declarants] were members thereof, and 3) the proffered statements were made during the course of and in furtherance of the conspiracy." *Cox,* 923 F.2d at 526. We REMAND this case for further proceedings consistent with this opinion.