165 F.3d 33
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Enrique HERRERA, Defendant-Appellant.
 No. 98-1432.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 5, 1998.
Decided Aug. 28, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana. Hammond Division. No. 2:96 CR 75. James T. Moody, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. HARLINGTON WOOD, Jr., Hon. FRANK H. EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Enrique Herrera was convicted by a jury of one count of possession of marijuana with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). At sentencing, the district court found that Herrera's relevant offense conduct involved 909 kilograms of marijuana and sentenced him to 63 months' imprisonment. Herrera appeals his sentence on the ground that the district court improperly attributed to him quantities of marijuana not part of the convicted offense. We affirm.
 
 
 2
 In August of 1995, the United States Customs Service, operating out of Texas, began investigating a drug smuggling group. As part of its undercover investigation, Customs officials rented a storage space in Indianapolis, Indiana and placed 909 kilograms of marijuana in it. On August 29, 1995, a confidential informant and an undercover officer met with two targets of the investigation, Saucedo and Velencia, at an Econo-lodge motel in Indianapolis. Saucedo and Velencia agreed to buy the 909 kilograms of marijuana. That same day, defendant Jose Ramirez contacted Appellant Herrera to seek his assistance in transporting the marijuana. After Herrera agreed to help, Ramirez rented a van for two days and Herrera signed the rental agreement as an additional driver. Ramirez and Herrera then checked into the same Econo-lodge motel where earlier that same day Saucedo and Velencia had met with the undercover officer and the confidential informant. That night, Saucedo, Velencia, Ramirez, and Herrera all had dinner together at the motel.
 
 
 3
 Early the next morning, Saucedo, Velencia, Ramirez, and Herrera drove from the Econo-lodge motel to the storage facility. Herrera pulled the van directly in front of the storage unit containing the marijuana. The unit was opened, and Ramirez, Saucedo, and Velencia began loading blocks of marijuana into the van. Herrera assisted the loading operations from inside the van and placed large garbage bags over the marijuana blocks to hide them from view. After about half of the marijuana was loaded into the van, Ramirez and Herrera drove off in the van with Herrera at the wheel. No money was exchanged, and the rest of the marijuana remained behind in the locked, but unguarded, storage unit. Law enforcement officials followed Herrera's and Ramirez's van and eventually pulled them over. Herrera immediately exited the van and walked over to the waiting squad car instead of allowing the police officers to come to him. After receiving a traffic citation, Herrera permitted the officers to search the van. The drugs were discovered, along with a loaded gun, and the two men were arrested.
 
 
 4
 In a four-count superceding indictment, the government charged Herrera and Ramirez with one count of conspiracy to possess with the intent to distribute marijuana in violation 21 U.S.C. § 846; one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The fourth count of the superceding indictment, which related to Ramirez alone, was later dismissed.
 
 
 5
 Herrera and Ramirez pleaded not guilty to the charges and the case proceeded to trial. Herrera testified on his own behalf and maintained that he did not know anything about the cargo to be retrieved until he arrived at the storage facility, at which time he realized the cargo was marijuana. Herrera claimed that he had no involvement with the marijuana prior to his arrival at the storage facility and had no intention of returning to the storage facility to pick up the remainder of the drugs. The government, by contrast, presented testimony indicating that Herrera was a knowing member of a criminal scheme to possess and distribute marijuana.
 
 
 6
 A jury found Herrera guilty of Count Two of the Superceding Indictment (possession with the intent to distribute marijuana) and found Ramirez guilty on all three counts of the Superceding Indictment. As to Herrera, the Presentence Investigation Report recommended a base offense level of 30 pursuant to U.S.S.G. § 2D1.1 based upon the calculation that Herrera's criminal activity involved 909 kilograms of marijuana. Herrera objected to this portion of the PSI, arguing that he should be held accountable only for the amount of marijuana recovered from the van (approximately half of the 909 kilograms). The district court agreed with the PSI and found that a preponderance of the evidence supported the government's contention that Herrera should be charged, for sentencing purposes, with possessing 909 kilograms of marijuana. After adjusting Herrera's base level downwards for acceptance of responsibility and for playing a minor role in the offense, the district court sentenced Herrera to 63 months' imprisonment.
 
 
 7
 Herrera argues on appeal that the quantity of marijuana other than that recovered from the rental van should not be considered "relevant conduct" for sentencing purposes because insufficient evidence supported the district court's finding that he acted in furtherance of a "jointly undertaken criminal activity." A district court's calculation of the quantity of drugs involved in an offense is a finding of fact reversed only for clear error. United States v. McClinton, 135 F.3d 1178, 1192 (7th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 2308, 141 L.Ed.2d 167, petition for cert. filed (June 30, 1998). This court must affirm unless it is "left with the definite and firm conviction that a mistake has been committed." United States v. Beler, 20 F.3d 1428, 1431 (7th Cir.1994).
 
 
 8
 In calculating a defendant's base offense level under the Sentencing Guidelines, the sentencing court must determine the quantity of drugs for which the defendant is accountable U.S.S.G. § 2D1.1. This quantity encompasses not only amounts linked to the charge of conviction, but also all amounts of drugs properly considered part of the defendants "relevant conduct," as defined by U.S.S.G. § 1B1.3. In determining what conduct is considered "relevant conduct" for sentencing purposes, "a court may consider a broad range of information, including uncharged crimes, crimes where charges have been dismissed, and crimes for which the defendant has been acquitted." United States v. Valenti, 121 F.3d 327, 334 (7 th Cir.1997).
 
 
 9
 Sentencing Guideline § 1B1.3, which defines relevant conduct, holds a defendant accountable for the conduct of others if the defendant's own conduct is committed "in furtherance of ... jointly undertaken criminal activity" and the conduct is "reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3, comment. (n. 2). "[J]ointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." Id. (emphasis added). As made clear by the italicized language of the previous sentence, a defendant need not be convicted of a conspiracy charge to be held accountable for participating in "jointly undertaken criminal activity,"--although the acts comprising the relevant conduct must advance the objectives of the jointly undertaken criminal activity. See United States v. McDuffy, 90 F.3d 233, 236 (7 th Cir.1996). Here, Herrera does not contest his accountability for the quantity of drugs recovered from the van, nor does he dispute that possession of the drugs in the storage facility was "reasonably foreseeable." Rather, Herrera simply contests the district court's finding that his actions furthered the objectives of a jointly undertaken criminal activity involving the marijuana left behind in the storage unit.
 
 
 10
 A preponderance of the evidence supports the district court's finding. First of all, the district court heard testimony, both at trial and at sentencing, indicating that the possession of large quantities of drugs is reflective of a large-scale drug trafficking organization and that Herrera was a knowing member of this scheme: he signed his name to the van's rental contract; checked into the same motel used by Saucedo and Velencia to arrange for the purchase of the drugs; had dinner with Saucedo and Velencia; drove the van to the storage locker, where he was able to view the entire amount of stored marijuana; participated in loading the marijuana into the van; drove the marijuana away in the van accompanied only by Ramirez and without making any payment to Saucedo and Valencia, and was entrusted with information pertaining to the location of the approximately 450 remaining kilograms of marijuana, which, incidentally, was secured only by a simple lock. Moreover, the court listened to the testimony of Agent Hojnicki, a police officer with the Highland, Indiana police department, who opined that only people in positions of trust within a drug organization would be privy to the location of this much contraband. Finally, the district court heard testimony concerning a confidential source who stated that he knew Herrera to be a cocaine and marijuana distributor, that Herrera distributed drugs with Ramirez, and that Herrera and Ramirez stored marijuana at a used car lot.
 
 
 11
 Herrera's actions demonstrate a degree of cooperation and trust that is indicative of an on-going relationship with members of a drug scheme. Our caselaw also supports this conclusion. In United States v. Rodriguez, 975 F.2d 404, 412 (7 th Cir.1992), we found the defendant to be a trusted member of a drug conspiracy where he accompanied other conspirators to a drug transaction and was permitted to remain alone in a car with five kilograms of cocaine. " '[I]t strikes us as incredible," ' we said, " 'that [a drug dealer] would have a person accompany him to a drug deal ... where the person did not have the [drug dealers] utmost trust and confidence." ' Id. (quoting United States v. Perry, 747 F.2d 1165, 1169 (7 th Cir.1984)). And in United States v. Sasson, 62 F.3d 874, 886-87 (7 th Cir.1995), we concluded that although the defendant did not personally negotiate or conduct drug transactions, his presence and close proximity to those transactions permitted the belief that he was trusted by drug conspirators. This court also explained that "[w]hile mere presence at the scene of a drug deal is insufficient to establish membership in a drug conspiracy ... '[p]resence or a single act will suffice ... if the circumstances permit the inference that the presence or act was intended to advance the ends of conspiracy." ' Id. at 887 (citations omitted). See also United States v. Pearson, 113 F.3d 758, 762 (7 th Cir.), cert. denied, --- U.S. ----, 118 S.Ct. 641, 139 L.Ed.2d 619 (1997).
 
 
 12
 In sum, we have little trouble concluding that Herrera's involvement was not limited to his presence at a single drug scene. Among other things, he signed the van rental agreement, helped load the van with marijuana, and drove the van away from the storage facility with a cargo worth approximately $800,000--without making any payment for the drugs. It stands to reason that Herrera would not have been entrusted with these tasks, as well as with information pertaining to the location of a great deal more marijuana, were he not highly trusted by the other three men. In addition to the measure of trust his actions belied, he participated in an illegal act in such a way as to make success of the drug operation more likely. This degree of responsibility and involvement permits the inference that Herrera's participation furthered the objectives of a jointly undertaken criminal activity that included all of the marijuana in the storage facility. Accordingly, the district court properly included as part of Herrera's sentence the marijuana left behind in the storage unit.
 
 
 13
 The judgment of the district court is AFFIRMED.