**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Miguel SANTIAGO, Defendant-Appellant.**

**No. 77–2021.**

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1978.

Decided August 22, 1978.

Ronald A. Himel, Chicago, Ill., for defendant-appellant.

Charles B. Burch, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and WOOD, Circuit Judges, and SOLOMON, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendant Miguel Santiago and three others not involved in this appeal were charged in a one count indictment with the knowing and intentional distribution of heroin in violation of Title 21, United States Code, § 841(a)(1). The defendant was tried separately and convicted by a jury.[1]

There are three major issues: whether or not the trial judge made a preliminary determination as to the admissibility of the declarations of the joint venturers; and if he did, whether the correct legal standard of admissibility was applied and satisfied. The final issue is whether after the guilty verdict the defendant's continued claim of innocence was improperly considered by the trial judge at the time of sentencing. We affirm.

Factually this case is not an unusual narcotics case, but it serves to raise certain legal issues commonly encountered in joint venture or conspiracy cases under the Federal Rules of Evidence, which deserve some clarification in this circuit.

■ The facts need only be briefly summarized. This case was developed by a special agent of the Drug Enforcement Administration working the street undercover with a confidential informant. The negotiations for the purchase of a kilogram of heroin for $29,500 were initiated with two women codefendants of Santiago. After verifying that the supposed purchasers had the required money, the two women proceeded to walk to defendant's car a short distance away where they were observed by other agents to have a conversation with Santiago and a male codefendant. Santiago remained in his car, but all three code-

fendants returned to continue the negotiations. They suggested that they all go to the nearby car to weigh the heroin and complete the transaction. The agent buyer objected to that procedure. Then feigning a rejection of the transaction the agent left, but returned in a short time. Negotiations were resumed. The male codefendant explained that another individual nearby actually had possession of the heroin but was afraid to deliver. The negotiations as to how to culminate the transaction continued until the male codefendant also indicated his newly acquired fear of the transaction. At that point one of the women codefendants agreed that she would do it. She went back to the defendant in his car and after a short ride into an alley with him returned alone with the heroin wrapped in her coat. With the defendant in his car were the scales. Before it was all accomplished, there had been four separate trips back and forth by Santiago's codefendants between Santiago and the supposed buyers. It is very clear from the evidence that the defendant, who had had more narcotics experience than his associates, sought to insulate himself from the risk but not from the money. "The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941).

### I.

■ Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement by a co-conspirator of a party made during the course and in furtherance of the conspiracy is not hearsay to be excluded under Rule 802. We shall refer to the joint venture in conspiracy terms. When a statement of a co-conspirator which would otherwise have been regarded as hearsay is proffered, a preliminary question arises under

---

* The Honorable Gus J. Solomon, Senior District Judge for the District of Oregon, is sitting by designation.

1. Defendant was sentenced to five years imprisonment and a special three year parole term.

Rule 104 of the Federal Rules of Evidence.[2] Both parties agree and so does this court that Rule 104 requires a preliminary determination by the trial judge as to the admissibility of the declaration of a co-conspirator. Under Rule 104 the competence of a co-conspirator declaration justifying its admissibility depends upon whether or not the existence of the conspiracy has been sufficiently established, and whether under Rule 801(d)(2)(E) the declaration was made during the course and in furtherance of the conspiracy.

■ It continues to be recognized that the trial judge retains the option of conditionally admitting the co-conspirator declaration evidence before the conspiracy has been independently established, but subject to the subsequent fulfillment of that critical condition. *United States v. Stanchich,* 550 F.2d 1294, 1298 (2d Cir. 1977); *United States v. McCormick,* 565 F.2d 286, 289 n.5 (4th Cir. 1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769; *United States v. Brown,* 555 F.2d 407, 422–23 (5th Cir. 1977), *cert. denied,* 435 U.S. 951, 98 S.Ct. 1578, 55 L.Ed.2d 801. In the event of such a failure a mistrial may be required, and even if not, an instruction for the jury to disregard the statements would be in order. Neither was requested, but neither was required in this case. Therefore, the defendant's objection that the jury was permitted to hear the incriminating statements of the co-conspirators contemporaneously with the independent evidence of Santiago's involvement in the conspiracy is without merit.

■ Whether or not the trial judge fulfilled his Rule 104 preliminary question responsibility is not as clear from the record made at the time admissibility was determined as is to be preferred. We must look elsewhere in the record. The issue was first raised when defendant prior to trial presented a motion *in limine* to exclude the use of the conspiracy declarations of the codefendants. In denying that motion after a hearing, the trial judge made a somewhat vague but sufficient finding that a *prima facie* showing of the existence of the conspiracy had been established permitting the jury to hear and consider the declarations of the co-conspirators. Some support for relying on this prior determination is found in *United States v. Haldeman,* 181 U.S.App.D.C. 254, 330, 559 F.2d 31, 107 (1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250, although Rule 104 was not in effect at the time of the trial. That court determined that it was not inappropriate in ruling on preliminary questions to consider related evidence from a preliminary pretrial proceeding. Under Rule 104 the technical rules of evidence, except those with respect to privileges, are not applicable to the trial judge's preliminary question determinations. We see no necessity in this case for the trial judge during trial to have reconsidered the same matter in the absence of some new circumstance, merely in order to reaffirm his prior ruling, as defendant urges.

II.

We must next determine by what standard the sufficiency of the independent evidence of the conspiracy is to be measured, and then whether that standard was met. This problem has not been directly addressed by this court since Rule 104 became effective July 1, 1975.

It has long been the general rule in this circuit that the defendant who failed to prevent the admission into evidence of co-conspirator statements by convincing the trial judge that a *prima facie* showing of

---

2. Rule 104 of the Federal Rules of Evidence provides in pertinent part:

 (a) Questions of admissibility generally.— Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

 (b) Relevancy conditioned on fact.—When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

the alleged conspiracy had not been established by the government by independent evidence was to be given a second chance to make a similar exclusion argument to the jury. The jury was then instructed that the acts and declarations of one of the alleged co-conspirators made during and in the furtherance of the conspiracy could not be used against another alleged co-conspirator until it had been established by independent evidence beyond a reasonable doubt that a conspiracy existed and that the other alleged co-conspirator was a member of that conspiracy. *United States v. Santos,* 385 F.2d 43 (7th Cir. 1967), *cert. denied,* 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148.[3] Merely to state that rule raises doubts about its efficacy. Even though the jury was cautioned when a hearsay declaration was admitted, the jury was expected during its deliberations to sort through the evidence and to lay aside the often very prejudicial co-conspirator's hearsay statements and to immunize itself from its influence until it first found by other independent evidence that the conspiracy and the defendant's membership in it had been established beyond a reasonable doubt. The jury was then free to consider the co-conspirator's hearsay declarations. At that point conspiratorial guilt had in theory already been established. The co-conspirator's declarations could only confirm the judgment previously reached. To expect such a precise untainted jury performance must strain the confidence of even the most ardent admirers of the jury system, and is unnecessary. Long before the New Federal Rules of Evidence, Judge Learned Hand addressed the problem.

It is difficult to see what value the declarations could have as proof of the conspiracy, if before using them the jury had to be satisfied that the declarant and the accused were engaged in the conspiracy charged; for upon that hypothesis the declarations would merely serve to confirm what the jury had already decided. In strict logic these instructions in effect altogether withdrew the declarations from the jury, and it was idle to put them in at all. The law is indeed not wholly clear as to who must decide whether such a declaration may be used; but we think that the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing them to consider it as proof only after they too have decided a preliminary issue which alone makes it competent. Indeed, it is a practical impossibility for laymen, and for that matter for most judges, to keep their minds in the isolated compartments that this requires.

*United States v. Dennis,* 183 F.2d 201, 230–31 (2d Cir. 1950), *aff'd,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137.

Rule 104 of the Federal Rules of Evidence requires that we reexamine the prevailing rule in this circuit.[4] We now substantially adopt the view shared by the First,[5] Second,[6] Third,[7] Fourth,[8] and Eighth[9] Circuits.

---

3. See Manual on Jury Instructions in Federal Criminal Cases, Seventh Circuit Judicial Conference Committee on Jury Instructions, Judge La Buy, Chairman, Ch. 10 (1965).

4. This problem has been previously considered by a district court in this circuit, *United States v. Herrera,* 407 F.Supp. 766 (N.D.Ill. 1975). In that case the trial judge considered the matter to be a preliminary issue of fact to be decided by the court as a matter of law to be resolved by applying a substantial evidence standard, rather than a preponderance of evidence test.

5. *United States v. Petrozziello,* 548 F.2d 20 (1st Cir. 1977); *United States v. Martorano,* 557

F.2d 1 (1st Cir. 1977), *cert. denied,* 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515.

6. *United States v. Stanchich,* 550 F.2d 1294 (2d Cir. 1977).

7. *United States v. Trowery,* 542 F.2d 623 (3d Cir. 1976), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1132, 51 L.Ed.2d 555.

8. *United States v. Stroupe,* 538 F.2d 1063 (4th Cir. 1976); *United States v. Jones,* 542 F.2d 186 (4th Cir. 1976).

9. *United States v. Bell,* 573 F.2d 1040 (8th Cir. 1978).

■ Rule 104(a) and 104(b) did not eliminate all ambiguities about who is to decide co-conspirator preliminary questions or by what standard.[10] We believe that the responsibility for admission is to be determined under Rule 104(a) and now rests solely upon the trial judge. There is no further appeal from that ruling on admissibility by the defendant to the jury. The jury, however, still retains its full responsibility to determine the related matters of credibility and weight as it considers all the evidence in determining whether guilt has been established beyond a reasonable doubt.

■ Whether or not the conspiracy has been established by sufficient, independent evidence, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942),[11] so as to permit admission of co-conspirator declarations, we consider to be a matter of competency under Rule 104(a), not conditional relevancy under Rule 104(b). 21 Wright & Graham, Federal Practice and Procedure: Evidence § 5053 at 259–60 (1977); 10 Moore's Federal Practice ¶ 104.13[2], [5] and 104.22[1] (2d ed. 1976). The competence of evidence is determined by whether or not the probability of its reliability is sufficiently great to permit its admissibility. 1 Weinstein's Evidence ¶ 104[05] at 104–40. We do not interpret Rule 104(b) as being applicable in the usual case to the admissibility issue of co-conspirator declarations. In *United States v. Ochoa*, 564 F.2d 1155, 1157 n.2 (5th Cir. 1977), however, it is suggested otherwise. Weinstein, *supra*, ¶ 104[05] at 104–43 also notes that the admissibility issue could be framed in relevancy terms, in which even the jury would pass on the issue under Rule 104(b), but finds it preferable to characterize the problem as one of competence to be decided under Rule 104(a).[12]

Since admissibility has not become the trial judge's sole responsibility, it is necessary to consider what standard is to be applied. The answer is not found in the rules. Weinstein urges a high degree of preliminary proof as a condition to admission.

> The better practice would be to require a very high degree of proof before admitting the statement. Only if the court is itself convinced beyond a reasonable doubt—considering hearsay as well as non hearsay evidence—of the conspiracy, defendant's membership, and that the statement was made in furtherance thereof, should it admit.

Weinstein, *supra*, ¶ 104[05] at 104–44.[13] Wright and Graham anticipate that in con-

---

**10.** 1 Weinstein's Evidence ¶ 104[05] at 104–43 (1976).

**11.** By reason of the provision in Rule 104(a) that the court in deciding admissibility is not bound by the rules of evidence (except by those with respect to privileges), it has been suggested that *Glasser* insofar as it rejected the view that the existence of a conspiracy could be proved by the very hearsay statement for which admission is sought has been overruled by the adoption of Rule 104. *United States v. Martorano*, 557 F.2d 1, 12 (1st Cir. 1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed. 515. The Eighth Circuit is not willing to go that far, believing that it would be an unwarranted "bootstrapping" procedure. *United States v. Macklin*, 573 F.2d 1046, 1048 n.2 (8th Cir. 1978). In *United States v. Petrozziello*, 548 F.2d at 23 n.2, appears a word of caution for trial judges. There it is noted that "[T]he use of inadmissible evidence to determine the existence of a conspiracy seems to contradict the traditional doctrine that conspiracy must be proved by independent, non-hearsay evidence. It suggests that a conspiracy may be proved by the very statement seeking admittance. While the logic of the new rule may permit bootstrapping of this sort, earlier case law rejects it. (Citation omitted.) At the least, the *Glasser* teaching survives as an admonition that trial judges should give little weight to bootstrap evidence in deciding whether to admit hearsay under the co-conspirator exception."

We do not reach that issue in this case as the trial court fully observed the teachings of *Glasser*.

**12.** An illustration of the distinction in characterization is also given in Wright & Graham, Federal Practice and Procedure: Evidence § 5054 at 268.

**13.** See also Bergman, *The CoConspirators' Exception: Defining the Standard of the Independent Evidence Test Under the New Federal Rules of Evidence*, 5 Hofstra L.Rev. 99 (1976), which argues for a reasonable doubt standard.

spiracy cases where the preliminary fact to be determined coincides with the ultimate issue judges will take a less stringent view. Wright & Graham, *supra*, § 5053 at 265. Another commentator urges the use of a preponderance standard for testing the co-conspirator declaration question, although advocating a flexible standard for other purposes under Rule 104(a) depending on the nature of the preliminary question. Saltzburg, *Standards of Proof and Preliminary Questions of Fact*, 27 Stan.L.Rev. 271, 303–04 (1975). *United States v. Nixon*, 418 U.S. 683, 701, n.14, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974), decided before the new rules became effective, states that for the declarations of co-conspirators to be admissible, "[a]s a preliminary matter, there must be substantial, independent evidence of the conspiracy, at least enough to take the question to the jury." Substantial independent evidence has been equated with *"prima facie"* in *United States v. Spanos*, 462 F.2d 1012, 1014 (9th Cir. 1972).

Even on the issue of the voluntariness of a confession the Supreme Court in *Lego v. Twomey*, 404 U.S. 477, 484, 92 S.Ct. 619, 30 L.Ed.2d 618 (1971), found that a preponderance of evidence was sufficient to permit the introduction of the questioned confession. The Supreme Court also made it clear that the normal rule is that the admissibility of evidence is a question for the court rather than for the jury, and that it is not required that both court and jury pass upon admissibility even when constitutional grounds are asserted for excluding it. 404 U.S. at 489, 92 S.Ct. 619.

Some circuits which prior to the new rules followed procedures and standards generally similar to those in use in this circuit have felt compelled by Rule 104(a) to make changes. In other circuits no changes were believed to be needed. In the First Circuit the prior rule was substantially the same as in this circuit. The jury played a prominent role in deciding when the co-conspirator exception could be invoked and was permitted by the court to make the final admissibility decision. Now under the new rules a different view is taken.

. . . The new rules, by eliminating the jury's role, place a greater burden on the judge, for his decision is now conclusive. In years past, this circuit has followed the general rule that the judge should admit hearsay against a defendant if the judge finds enough independent, non-hearsay evidence to make a prima facie case of conspiracy. (Citations omitted.) This standard makes sense when the jury has the last word; the judge should refuse to admit a co-conspirator's hearsay only when no reasonable jury could find that there was a conspiracy. But rule 104(a) requires that questions of admissibility be "determined" by the judge, and findings a prima facie case is not the same as "determining" that a conspiracy existed. A higher standard is implicit in the judge's new role.

Other changes in the rules also suggest a higher standard. The new rules permit a trial judge to base his "determination" on hearsay and other inadmissible evidence. Fed.R.Evid. 104(a). Continued reliance on a prima facie standard will either broaden the co-conspirator exception unconscionably or plunge the courts into metaphysical speculation about how a prima facie case can be built on inadmissible evidence.

Although the prima facie standard is no longer appropriate, we see no reason to require that conspiracy be proved beyond a reasonable doubt. That is the standard the jury will apply to the evidence as a whole. The judge is ruling on admissibility, not guilt or innocence; the government's burden need not be so great. (Citations omitted.) The ordinary civil standard is sufficient; if it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was in furtherance of the conspiracy, the hearsay is admissible.

*United States v. Petrozziello*, 548 F.2d at 23. We now adopt that same view. Other circuits have done likewise.

The Second Circuit has stated that Rule 104(a) requires that preliminary questions concerning admissibility of evidence be determined by the court using a preponderance test. *United States v. Stanchich,* 550 F.2d at 1297–99, and n.4.

The Third Circuit likewise finds that the issue is to be decided by the court as a question of competence of evidence using a preponderance standard. *United States v. Trowery,* 542 F.2d at 626–27.

The Fourth Circuit in holding that admissibility is a determination to be made by the court rejects the beyond a reasonable doubt requirement and applies a "fair preponderance standard." *United States v. Stroupe,* 538 F.2d at 1065; *United States v. Jones,* 542 F.2d at 202–203.

The Eighth Circuit views the new rule as causing subtle but significant changes in that the admissibility of an alleged co-conspirator's statement is now a preliminary question for the judge, not for the jury to decide. The shift of responsibilities between judge and jury occasioned the court to reevaluate the process. Now that the judge's decision on admissibility is viewed as final, the former *prima facie* standard is abandoned and the ordinary civil standard of preponderance of the evidence is adopted and deemed sufficient as compared with a reasonable doubt standard since the court is ruling on admissibility, not guilt. *United States v. Bell, supra,* at 1043–1044; see also *United States v. Macklin,* 573 F.2d 1046 (8th Cir. 1978); and *United States v. Smith,* 578 F.2d 1227 (8th Cir. 1978).

Some similarities and some differences are found in the prevailing practices of other circuits. The Fifth Circuit has considered the implications of Rule 104 and decided that no change in its traditional rule is required. The trial judge makes the initial admission determination on a *prima face* basis and then submits the admission issue to the jury as was the prior practice in this circuit. *United States v. Thomas,* 567 F.2d 638, 642 (5th Cir. 1978); *United States v. Ochoa,* 564 F.2d at 1157.

The Sixth Circuit follows the rule that the preliminary question of admissibility is dependent upon independent evidence and is a matter for the trial judge, not the jury, but applies a *prima facie* standard. *United States v. Mitchell,* 556 F.2d 371, 377 (6th Cir. 1977); *United States v. Mayes,* 512 F.2d 637 (6th Cir. 1975).

In the Ninth Circuit, we do not find that any change has been made because of Rule 104. A *prima facie* standard is used by the trial judge and the issue of admissibility is not submitted to the jury. *United States v. Calaway,* 524 F.2d 609, 612 (9th Cir. 1975), *cert. denied,* 424 U.S. 967; *Carbo v. United States,* 314 F.2d 718, 735–37 (9th Cir. 1963); *United States v. Wood,* 550 F.2d 435, 442 (9th Cir. 1961).[14]

We do not find that the Rule 104 question has been specifically addressed in the Tenth Circuit. A rule similar to that previously adhered to in this circuit continues to be followed. *United States v. Gutierrez,* 576 F.2d 269 (10th Cir. 1978); *United States v. Lemon,* 497 F.2d 854 (10th Cir. 1974); *United States v. Pennett,* 496 F.2d 293 (10th Cir. 1974); *Dennis v. United States,* 346 F.2d 10, 16 (10th Cir. 1965); *Briggs v. United States,* 176 F.2d 317, 320 (10th Cir. 1949).

■ Although in the present case the trial judge used the terminology "*prima facie*" in making his preliminary finding as to the existence of the conspiracy, which heretofore has been the standard, our examination of the record satisfies us that there was no reversible error, as the independent evidence of the conspiracy was more than sufficient to meet the preponderance test as well, which we now adopt. The trial judge stated it this way when denying the defendant's Motion for Judgment of Acquittal at the close of all the evidence:

14. The Ninth Circuit position is criticized in Saltzburg, *Standards of Proof and Preliminary Questions of Fact,* 27 Stan.L.Rev. 271, 303, on the basis that the trial judge in making the admissibility decision is not first required to find by the preponderance of the evidence that the conspiracy existed, but only by the *prima facie* standard that the conspiracy "might have existed."

But it seems to me that the jury could find beyond a reasonable doubt from the evidence entirely apart from the statements by the other three defendants, that the defendant Santiago was in fact associated with this heroin transaction and did, by his conduct, seek to make it succeed.

I think the way in which he did that the jury could find was by operating the vehicle which was, in effect, the movable command post for this series of negotiations and inferentially at least, the situs of the heroin.

I think that one could find beyond a reasonable doubt that the observed conduct of Santiago is inconsistent with the hypothesis that he was not involved in this transaction.

 The defendant made a general continuing objection at the time the declarations were admitted subject to a cautionary instruction. Neither that objection nor any other objection, however, questioned the standard used by the judge in passing on admissibility, the alleged lack by the trial judge of any specific finding of admissibility, or the subsequent submission to the jury of the admissibility issue, issues now raised on appeal. The defendant acquiesced in the court's final instruction to the jury as to its restrictions on consideration of the co-conspirator declarations. We do not believe the defendant has any basis to complain as the court followed the then current procedures. *United States v. Petrozziello*, 548 F.2d at 23; *United States v. Martorano*, 557 F.2d at 11. The discretion of the trial judge in these circumstances will not be lightly disturbed. *United States v. James*, 510 F.2d 546, 549 (5th Cir. 1975), *cert. denied*, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81, 10 Moore's Federal Practice ¶ 104.13[2] at I–52. For the purposes of this case, as stated in 1 Weinstein, *supra*, ¶ 104[5] at 104–45, we find no error.

The better procedure is for the judge to make the final decision and then let the jury evaluate the probative force of the evidence in its decision on the merits. Nevertheless, some of the most careful judges still continue to give this more favorable charge. So long as the trial judge does not use this charge to cover his own failure to protect the defendant by excluding, there is no serious objection to the practice. It at least warns the jury that there are pitfalls and may cause it to think more deeply before convicting on a co-conspirator's declarations.

However, for future cases we see neither the need nor desirability of giving the former customary conspiracy instruction limiting the jury's consideration of the declaration of a co-conspirator.[15]

### III.

The final issue in this case is the defendant's claim that he was harshly sentenced due to his continued claim of innocence. At the sentencing hearing the judge remarked:

The defendant Santiago was involved in this transaction. There is no question in my mind about it. He continues to deny his guilt, which is another strike against him, as far as I am concerned.

At this point counsel for the defendant Santiago told the court, "That is on advice of counsel." Whereupon the court responded, saying:

Well, telling lies on advice of counsel does not win any points in my courtroom, and that is what he is still doing. At least he had the good sense not to take the stand and commit perjury during the trial, because had he done that, the sentence would be far more severe then it is going to be.

When the court proceeded to the sentencing of the other male defendant, the court stated as follows when distinguishing the culpability of the other co-conspirator with Mr. Santiago:

Another very important fact is that he [the other male co-conspirator] acknowledged his guilt and pled guilty. I always

---

**15.** Issues I and II of this opinion have been circulated among all judges of this court in regular active service. No judge favored a

rehearing *in banc* on the adoption by this circuit of the new conspiracy procedure and standard.

attach great weight to that because that is the first step to any reformation program: the acknowledgement of guilt. The defendant relies on *United States v. Biscoe*, 518 F.2d 95 (1st Cir. 1975); *Scott v. United States*, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969); *LeBlanc v. United States*, 391 F.2d 916 (1st Cir. 1968); *Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966); *United States v. Wiley*, 278 F.2d 500 (7th Cir. 1960).

In *Biscoe* the court found that in context the judge's comment at sentencing about the defendant's lack· of repentance did not inject the sentence with an improper consideration. In *LeBlanc* the judge at sentencing asked the defendant directly whether he was in fact guilty and upon objection by defendant's counsel, the judge responded that the defendant would take the responsibility for not answering. The court found this inquiry improper and a probability that it had adversely influenced the sentence. In the present case there was no direct inquiry of the defendant by the trial judge, and as we shall explain, we do not believe there was any discernible or substantial influence on the sentence. *Thomas* likewise is distinguishable. In that case the trial court insisted at the time of sentence that the defendant "come clean" as to his involvement in a bank robbery. The trial court warned the defendant that if he did not admit his guilt, his denial would be considered by the court in imposing sentence. When the defendant persisted in his claim of innocence, the sentencing court imposed the maximum possible sentence. The present case is to be distinguished from such an extreme situation. *Wiley* is also a more extreme situation. This court found that Wiley had been sentenced more severely than his co-conspirator principals with prior records merely because he had not pled guilty. This court suggested that the defendant as a minor participant was a fit subject for probation. No probation report had been considered. It was the second time the sentencing had been reviewed by this court. *Scott*, likewise, involved an unusual situation. During the sentencing hearing, it was revealed that the law clerk

of Judge Sirica, the sentencing judge, had advised defense counsel that there was only one way to get a light sentence and that was "to apologize four or five times and to say you were willing to turn over a new leaf." The clerk confirmed this advice from the the witness stand.

We have no quarrel with those cases, but they do not mandate that we vacate the sentence in this case and remand for resentencing. In the present case the court did not address· the defendant and demand a confession. The defendant was sentenced to only one-third the maximum permitted in spite of the fact that a large amount of heroin was involved and that the defendant was viewed as the ring leader. At sentencing the judge weighed and explained the variations in the sentences imposed on the various defendants. Consideration was given to Santiago's prior conviction as aggravating his sentence.

 The trial court is given a broad discretion in considering the sentence to be imposed upon a convicted defendant. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). The exercise of this broad discretion will not be disturbed on review unless there is a plain showing of abuse by the trial court. *United States v. Cardi*, 519 F.2d 309 (7th Cir. 1975); *United States v. ·Willard*, 445 F.2d 814 (7th Cir. 1971). A showing of abuse has not been made out by defendant by the mere fact that he received a heavier sentence after trial than did his codefendants who pleaded guilty. *United States v. Melendez*, 355 F.2d 914 (7th Cir. 1966); *Simpson v. United States*, 342 F.2d 643 (7th Cir. 1965). This circuit noted in *Simpson* that it would not vacate a sentence of the appellant which was greater than that given to the pleading codefendant, particularly where the record showed that sentence was imposed in a thoughtful and discriminating way. Ordinarily the trial judge is not required to make an affirmative showing on the record to justify disparate sentences of codefendants, but the record in this case amply demonstrates that the trial judge gave indi-

vidualized, thoughtful consideration to the sentences which he imposed on each of the four defendants.

We find no error in the sentencing in these particular circumstances, but this is not to be construed as condoning a sentencing court's consideration of the failure of a defendant to admit guilt and repent as an adverse consideration in sentencing.[16]

AFFIRMED.

**16.** We note that defendant chose to exercise his Fifth Amendment privileges during trial and did not testify. In *United States v. Grayson*, —— U.S. ——, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), the Supreme Court held on a related issue that a determination by the trial judge that the defendant flagrantly lied under oath during his trial may be considered at sentencing as probative of the defendant's prospects for rehabilitation.