**UNITED STATES of America, Plaintiff,**

**v.**

**Rufus SIMS, et al., Defendants.**

**No. 92 CR 166.**

United States District Court,
N.D. Illinois, E.D.

Oct. 23, 1992.

Scott T. Mendeloff, Sean B. Martin, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Michael Gregory Logan, Chicago, IL, for defendant Rufus Sims.

Daniel S. Alexander, Durkin, Foster, Roberts & Barrett, Chicago, IL, for defendant Donald Moore.

Robert G. Clarke, Chicago, IL, for defendant Michael Stevens.

Standish E. Willis, Chicago, IL, for defendant Delwin Langston.

Richard S. Jalovec, Richard S. Jalovec & Associates, Chicago, IL, for defendant Dennis Gilliam.

Paul Augustus Wagner, Paul A. Wagner, Chicago, IL, for defendant William Burch.

Michael Gregory Logan, Chicago, IL, for defendant Timothy Henderson.

William J. Stevens, Chicago, IL, for defendant Darryl Young.

Paul Edward Paprocki, Chicago, IL, for defendant Joe Boyles.

Carl Peter Clavelli, Chicago, IL, for defendant Maurice Harmon.

Robert S. Bailey, Chicago, IL, for defendant Shawn Baker.

Linda Amdur, Chicago, IL, for Dennis Gilliam.

Keith Allan Spielfogel, Chicago, IL, for defendant Estella Sims.

Terence Patrick Gillespie, Marc William Martin, Genson, Steinback & Gillespie, Chicago, IL, for defendant Andrea Thomas.

Herbert Louis Goldberg, Giovannini & Goldberg, Sheldon Bart Nagelberg, Chicago, IL, for defendant Ruby Chambers.

Richard A. Halprin, Chicago, IL, for defendant Eric Smith.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the government's pretrial written proffer of evidence, submitted pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), summarizing the evidence that the government expects to adduce at trial to establish that a conspiracy existed; that each of the defendants participated in the conspiracy; and that the co-conspirator statements sought to be introduced were made during the course of and in furtherance of the conspiracy.

■ Under Federal Rule of Evidence 801(d)(2)(E), statements made by a co-conspirator of a defendant during the course of and in furtherance of the conspiracy are not hearsay when offered against a defendant. Before these statements will be allowed into evidence, however, this court must determine that the government has demonstrated, by a preponderance of the evidence, that as to each defendant "(1) a conspiracy existed, (2) the defendant and the declarant were members thereof, and (3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy." *United States v. Cox*, 923 F.2d 519, 526 (7th Cir.1991). In making this determination, the court "may examine the hearsay statements sought to be admitted." *Bourjaily v. United States*, 483 U.S. 171, 181, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

### A. *Existence of the Conspiracy*

All of the defendants in this case are charged in the narcotics conspiracy, either as full participants or as aiders and abettors of that conspiracy. The narcotics conspiracy encompasses the various criminal conduct charged elsewhere in the indictment, including concealing income from and assets obtained by the proceeds of the illegal distribution of narcotics. The government states that the "essence of the charged conspiracy is that the co-conspirators joined together to sell heroin and cocaine for substantial financial gain, to maintain that conspiracy through secrecy and violence, to avoid prosecution for this criminal conduct, and to avoid discovery and seizure of the illegal proceeds of the conspiracy." Government's Proffer Regarding the Admission of Co-conspirator Statements, at 14 [hereinafter "Government's Proffer"].

From approximately 1985 to present, defendants Rufus Sims, Donald Moore, Michael Stevens, Delwin Langston, Dennis Gilliam, William Burch, Derrick Griffin, Timothy Paul Henderson, Ray Garvin, Joe Boyles, Maurice Harmon, Darryl Young, Shawn Baker, Timothy Patterson and others, conspired knowingly and intentionally to possess with the intent to distribute and to distribute heroin and cocaine. Defendants Estella Sims, Andrea Thomas, Ruby Chambers and Richard Goldstein aided and abetted this conspiracy by acting to conceal from law enforcement agencies the income from and assets obtained by the sale of narcotics by the conspiracy. Government's Proffer, at 14–15.

According to the government's proffer, the existence of the conspiracy, directed by defendant Rufus Sims or his subordinates, will be established by evidence that members of the conspiracy (1) obtained supplies of narcotics; (2) mixed and repackaged the narcotics into user-size packets to sell to customers; (3) delivered the narcotics to distribution outlets and picked up cash proceeds from prior sales; (4) obtained and operated individual narcotics distribution outlets, including renting the apartments used for narcotics distribution, hiring workers to staff those outlets, overseeing the performance of those workers, and providing security for the operation of those distribution outlets and the conspiracy in general; (5) punished workers and others who threatened the security of the conspiracy

by methods including murder and beating; (6) obtained and maintained large quantities of firearms, including semiautomatic and automatic weapons and grenades, to provide security for the conspiracy; and (7) concealed from the Internal Revenue Service, the Drug Enforcement Administration, and other law enforcement agencies, the income from and assets obtained by the proceeds of the illegal distribution of narcotics. Government's Proffer, at 15–16.

### B. Each Defendant Participated in the Conspiracy

 For purposes of a *Santiago* proffer, once the charged conspiracy or joint venture is established "only slight evidence is required to link a defendant to it." *United States v. Shoffner*, 826 F.2d 619, 627 (7th Cir.) (citing other authorities), *cert. denied*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). The court may consider the conduct, knowledge and statements of the defendants and others in establishing their participation in the conspiracy. A single act or conversation can "suffice to connect the defendant to the conspiracy if that act leads to the reasonable inference of intent to participate in an unlawful enterprise." *United States v. Baskes*, 687 F.2d 165, 169 (7th Cir.1981) (citation omitted).

 A defendant joins a conspiracy if he or she agrees with a conspirator to one or more of the common criminal objectives set forth in the indictment; it is immaterial whether the defendant knows, has met with, or has agreed with every conspirator. *United States v. Boucher*, 796 F.2d 972, 975 (7th Cir.1986); *United States v. Balistrieri*, 779 F.2d 1191, 1225 (7th Cir.1985), *cert. denied sub nom.*, *United States v. DiSalvo*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). Furthermore, the government need not prove that a defendant

knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. *United States v. Liefer*, 778 F.2d 1236, 1247 n. 9 (7th Cir.1985); *United States v. Towers*, 775 F.2d 184, 189 (7th Cir.1985). In addition, any of the defendants may be found to have participated in a conspiracy even if they joined or terminated their relationship with core conspirators at different times.[1] *United States v. Ramirez*, 796 F.2d 212, 215 (7th Cir.1986); *United States v. Noble*, 754 F.2d 1324, 1329 (7th Cir.), *cert. denied*, 474 U.S. 818, 106 S.Ct. 63, 88 L.Ed.2d 51 (1985).

Each defendant must be shown to have participated in the conspiracy. In the instant case, several defendants may be linked to the conspiracy by their own admissions.[2] Furthermore, these admissions implicate co-conspirators by detailing their involvement. The Government's Proffer consisted of a 95–page statement of the facts and statements establishing the existence of a conspiracy and the defendants' participation in the conspiracy. The evidence presented in the court's opinion does not exhaust the evidence the Government proffers since, as noted above, "only slight evidence is required" to link a defendant to the conspiracy.

### Rufus Sims

 Rufus Sims' participation in the conspiracy will be established by the admissions made by several of his co-conspirators. Michael Stevens admitted that he worked for Rufus Sims at several drug houses and at "The Table" (a rotating headquarters for the conspiracy) "shaking dope" (*i.e.*, diluting and packaging heroin for sale). Stevens also told investigators that he accompanied Sims and others on trips to Las Vegas, San Diego and New York. Government's Proffer, at 89. Shawn Baker told investigators that he had sold narcotics for Sims in 1986 and 1987.

---

**1.** A defendant, even if not an "agreeing" member of the conspiracy, may also be found guilty of conspiracy if he knew of the conspiracy's existence at the time of his acts, and his acts knowingly aided and abetted the business of the conspiracy. *United States v. Kasvin*, 757 F.2d 887, 890–91 (7th Cir.), *cert. denied*, 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 572 (1985); *Unit-*

*ed States v. Galiffa*, 734 F.2d 306, 309–11 (7th Cir.1984).

**2.** The court notes that a defendant's own admissions are admissible against him or her without reference to the coconspirator statement rule. Fed.R.Evid. 801(d)(2)(A). *See United States v. Shoffner*, 826 F.2d at 626–27.

Government's Proffer, at 90. Maurice Harmon admitted to investigators that he sold narcotics for Rufus Sims from 1985 through 1988. *Id.* William Burch told investigators that he sold narcotics in the Sims organization from 1985 through 1988. Burch indicated that Rufus Sims delivered weekly salaries to the workers at Mr. G's bar on Chicago Avenue, a drug outlet. Burch stated that Rufus Sims directed Burch to participate in "violations" or disciplinary beatings. Government's Proffer, at 93.

### Donald Moore

Donald Moore's participation in the conspiracy will be established by the admissions of several of his co-conspirators. William Burch named Moore as among the workers at Mr. G's bar, a Sims drug outlet, with whom Burch sold narcotics. Burch told investigators that Moore supplied this location with new drugs to sell when the old supply ran out and delivered weekly salaries together with Rufus Sims at the Mr. G's drug outlet. Government's Proffer, at 92.

### Michael Stevens

Michael Stevens' participation in the conspiracy may be established by his admission to investigators that he worked for Rufus Sims between 1985 and 1987 at several different drug houses and at "The Table" "shaking dope." Government's Proffer, at 89.

### Delwin Langston

Delwin Langston's participation in the conspiracy will be established by the admissions of several of his co-conspirators. Maurice Harmon stated that Langston worked at "The Table" along with Stevens, Harmon and Rufus Sims. Harmon named Langston as among the Rufus Sims' lieutenants who directed Harmon as to what Sims wanted done and not done in the organization. Government's Proffer, at 91. Harmon also told investigators that Langston and Stevens worked as "delivery men" in the organization. *Id.* William Burch confirmed that Langston worked at "The Table" in his statement to investigators. Burch also told investigators that Langston

took part in disciplinary beatings or "violations." Government's Proffer, at 93.

### Dennis Gilliam

Dennis Gilliam's participation in the conspiracy will be established by the admissions of his co-conspirators. William Burch told investigators that Gilliam was among the individuals working at "The Table." Burch also stated that Gilliam took part in the disciplinary beatings or "violations" while working in the Sims organization. Maurice Harmon stated that Gilliam participated in the organization selling narcotics for Rufus Sims. Government's Proffer, at 90. Harmon said that Gilliam initially worked in the "drug spots" but later gained promotion to "The Table." *Id.*, at 91.

### Derrick Griffin

Derrick Griffin's participation in the conspiracy will also be proven by statements made by his co-conspirators. William Burch told investigators that he worked for the Sims organization at the Washington and Lotus location with Derrick Griffin and other individuals. Government's Proffer, at 92. Burch said that later he began a new job in the organization working with Derrick Griffin for about one year as a "delivery man." Government's Proffer, at 93. According to Burch, he and Griffin would drop off packets of narcotics at the drug houses as needed. Burch also stated that Griffin participated in disciplinary beatings in the Sims organization. *Id.*

### William Burch

William Burch's participation in the conspiracy will be shown by his admission to investigators regarding his role in selling narcotics for Sims and taking part in disciplinary beating at Sims' direction. Government's Proffer, at 92–93.

### Timothy Paul Henderson

Timothy Paul Henderson's participation in the conspiracy will be proven by the admissions of his co-conspirators. Maurice Harmon told investigators that Henderson participated in the organization selling narcotics for Rufus Sims. Government's Proffer, at 90. William Burch also named Henderson as among the individuals selling

cocaine, heroin and PCP in the Central and West End building. Government's Proffer, at 92.

### Jimmy Hudson

Jimmy Hudson's participation in the conspiracy will be proven by the statements of his co-conspirators. Maurice Harmon named Hudson as among the individuals working for the Sims organization selling narcotics. Government's Proffer, at 90. Shawn Baker told investigators he worked at the Central and West End drug house selling packages of heroin with Hudson, among others. *Id.* Baker said he and Hudson also worked at Mr. G's bar selling packages of heroin. *Id.*

### Ray Garvin

Ray Garvin's participation in the conspiracy will be proven by the statements of his co-conspirators. Maurice Harmon named Garvin as among the individuals working for the organization selling narcotics for Rufus Sims. Government's Proffer, at 90. William Burch also told investigators that Garvin worked in the organization's drug houses. Government's Proffer, at 93.

### Darryl Young

Darryl Young's participation in the conspiracy will be established by the statements of Young's co-conspirators. Maurice Harmon told investigators that Young was among members of the organization selling narcotics for Rufus Sims. Government's Proffer, at 90. William Burch stated that during the time he delivered packets of narcotics to the drug houses, Young worked at "The White House." Government's Proffer, at 93.

### Joe Boyles

Joe Boyles' participation in the conspiracy will be proven by the statements of his co-conspirators. Maurice Harmon named Boyles as among the individuals who worked in the Sims organization. Government's Proffer, at 90. Specifically, Harmon said he worked with Boyles at the drug house at Central and West End. Government's Proffer, at 91.

### Maurice Harmon

Maurice Harmon's participation in the conspiracy will be proven by his admission to investigators that he worked selling narcotics for Rufus Sims from 1985 through 1988. Government's Proffer, at 90.

### Shawn Baker

Shawn Baker's participation in the conspiracy will be proven by his admission to investigators that he worked for Rufus Sims selling narcotics in 1986 and 1987. Government's Proffer, at 90.

### Eric Smith

Eric Smith's participation in the conspiracy will be proven by the admissions of his co-conspirators. Maurice Harmon named Smith as among the individuals working in the Sims organization. Government's Proffer, at 90. William Burch also told investigators that Smith worked at a location near "The White House" selling brown heroin and cocaine. Government's Proffer, at 93.

### Estella Sims

Estella Sims' participation in the conspiracy will be proven by evidence that she, among others, acted to conceal from the Internal Revenue Service, the Drug Enforcement Administration, and other law enforcement agencies, the income from, and assets obtained by the proceeds of the illegal distribution of narcotics. Government's Proffer, at 66. Estella Sims, Rufus Sims' mother, orchestrated the conduct of third party nominees known as Smurfs providing them cash drug proceeds and telling them how to make purchases of large quantities of cashier's checks in amounts under $10,000, which checks Estella Sims then presented to attorney Richard Goldstein for the purpose of purchasing real estate in the names of third parties and in trust. Government's Proffer, at 68. Estella Sims also attempted to retrieve illicit funds from safe deposit boxes before the police could seize them. Government's Proffer, at 68.

### Andrea Thomas

Andrea Thomas' participation in the conspiracy will be proven by evidence that Thomas (Rufus Sims' girlfriend) acted to conceal the income from and assets obtained by the proceeds of the illegal distribution of narcotics. Government's Proffer,

at 66. Thomas received from Rufus Sims some of the cash proceeds of the narcotics conspiracy and stored these funds in a safe deposit box she opened in the name of a third party. Later, Rufus Sims and Thomas used these funds to purchase the Boeger property in Trust through nominees. Government's Proffer, at 69.

*Ruby Chambers*

Ruby Chambers' participation in the conspiracy will be established by evidence that Chambers acted to conceal the income from and assets obtained by the proceeds of the illegal distribution of narcotics. Government's Proffer, at 66. Chambers (Rufus Sims' wife) worked with Rufus Sims at "The Table" on occasion and assisted Sims in making covert purchases of property with narcotics proceeds, including a 1989 Astro Van. Government's Proffer, at 83. Rufus Sims provided Chambers the money for this purchase and was the owner in fact of the van. *Id.* Sims and Chambers used the name Hopkins on the car title and the alias "Tina Day" to conceal the true source of the money used to purchase the van as well as the true owner of the vehicle. Government's Proffer, at 83–84. Chambers also accompanied Estella Sims to Forest Park bank to retrieve the cash proceeds of the narcotics conspiracy from a safe-deposit box. Government's Proffer, at 84.

*Richard Goldstein*

Richard Goldstein's participation in the conspiracy will be proven by evidence that Goldstein handled real estate deals and other transactions on behalf of Rufus Sims to conceal income from and assets obtained by the proceeds of the illegal distribution of narcotics. *See* Government's Proffer, at 66–67. According to the Government's Proffer, the real estate purchases involved in this case were made using "structured transactions" or transactions designed to evade currency reporting laws and make difficult the identification of the actual purchaser of the property. Government's Proffer, at 69. Goldstein used a false social security number on the escrow account he opened for purposes of completing Sims' real estate transactions. *Id.* Goldstein also used inactive land trusts to purchase

Sims' property to conceal the fact that Sims was buying expensive real estate and that he had access to huge sums of cash. *Id.*

**C. Statement Made in "Furtherance" of the Conspiracy**

In determining whether a statement was made "in furtherance" of the conspiracy or joint venture, courts look for a reasonable basis upon which to conclude that the statement furthered the conspiracy. *United States v. Shoffner*, 826 F.2d at 628. Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and still be "in furtherance" of the conspiracy; the statement need not have been exclusively, or even primarily, made to further the conspiracy in order to be admissible under the conspirator exception. *United States v. Shoffner*, 826 F.2d at 628. In *Garlington v. O'Leary*, 879 F.2d 277 (7th Cir.1989), the Seventh Circuit reviewed an extensive array of decisions on this issue:

> A co-conspirator's statement satisfies the "in furtherance" element of Rule 801(d)(2)(E) when the statement is "part of the information flow between conspirators intended to help each perform his role." *United States v. Van Daal Wyk*, 840 F.2d 494, 499 (7th Cir.1988). Statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential co-conspirators, *see United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir.), *cert. denied*, [484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987)]; statements seeking to control damage to an ongoing conspiracy, *see Van Daal Wky*, 840 F.2d at 499, statements made to keep co-conspirators advised as to the progress of the conspiracy, *see United States v. Potts*, 840 F.2d 368, 371 (7th Cir.1987); and statements made in an attempt to conceal the criminal objectives of the conspiracy, *see United States v. Kaden*, 819 F.2d 813, 820 (7th Cir.1987); *United States v. Xheka*, 704 F.2d 974, 985–86 (7th Cir.), *cert. denied*, 464 U.S. 993 [104 S.Ct. 486, 78 L.Ed.2d 682] (1983)....

*Garlington,* 879 F.2d at 283–84. However, "[n]arrative declarations, mere 'idle chatter,' and superfluous casual conversations" are not statements made in furtherance of a charged conspiracy. *United States v. Doerr,* 886 F.2d 944, 951 (7th Cir.1989). Finally, it is immaterial that statements otherwise "in furtherance" of the conspiracy were made to a government witness, informer or agent. *United States v. Mealy,* 851 F.2d 890, 901 (7th Cir.1988).

### D. *Conclusion*

█ After reviewing the proffer submitted by the government, this court finds that the government has established, by a preponderance of the evidence, that the coconspirator statements at issue fall within the scope of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Based upon the written *Santiago* proffer, it is more likely than not that a conspiracy existed, that defendants participated in the conspiracy, and that statements were made "during the course of and in furtherance of" the conspiracy. As a preliminary matter therefore the statements are not hearsay and thus are admissable against the defendant coconspirators. In this circuit, however, the trial judge has the option of conditionally admitting the co-conspirator declaration evidence subject to actual proof of these matters at trial. *See United States v. Santiago,* 582 F.2d 1128, 1131 (7th Cir.1978); *United States v. Cox,* 923 F.2d at 526. The court exercises that option here.

Accordingly, for the reasons stated above, the government's evidentiary proffer as to co-conspirator statements is conditionally admitted under Rule 801(d)(2)(E) of the Federal Rules of Evidence, subject to proof of the conspiracy at trial.