**UNITED STATES of America, Plaintiff,**

v.

**Rufus SIMS, et al., Defendants.**

**No. 92 CR 166.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 27, 1995.

James B. Burns, Sean Martin, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Bernard B. Nathan, Jeffrey I. Gehl, Chicago, IL, for defendants.

### MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Defendant Rufus Sims is to stand trial in this cause. Now before the court is the Government's Proffer Regarding the Admission of Co-conspirator Statements ("Government's Proffer"), submitted in writing pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), summarizing the evidence that the government expects to adduce at trial to establish that a conspiracy existed; that defendant participated in the conspiracy; and that the coconspirator statements sought

to be introduced were made during the course of and in furtherance of the conspiracy, such that the coconspirator statements may be admitted pursuant to Federal Rule of Evidence 801(d)(2)(E). Defendant Rufus Sims has filed no objections to the government's written proffer.

## I. *BACKGROUND LAW*

This court has previously ruled on *Santiago* issues for the trial of certain of Rufus Sims's codefendants. *See United States v. Sims,* 808 F.Supp. 620 (N.D.Ill.1992). The court generally adopts its prior discussion of the background law on a *Santiago* proffer, there being no need here to reiterate that background. There is one relatively controversial point of law that the government raises, however, deserving comment. As shall be seen, though, the most important reason to address the issue is to declare the point moot for these immediate purposes, as the resolution of any such legal controversy has no practical effect on the outcome of this ruling.

The controversy the government flags (*see* Government's Proffer at 5 n. 3), is over the government's burden for 801(d)(2)(E) admissibility on the prong of defendant's participation in the conspiracy. On the other two prongs—existence of the conspiracy and statements made in furtherance of the conspiracy—there seems to be no doubt that the burden is a preponderance of the evidence. *See, e.g., United States v. Cox,* 923 F.2d 519, 526 (7th Cir.1991). The government suggests that there should be another standard for its burden regarding linking an individual defendant to the conspiracy, that the burden is merely "slight evidence." (Government's Proffer at 5 n. 3.) The government's authority for that standard is Seventh Circuit caselaw such as *United States v. Shoffner,* 826 F.2d 619, 627 (7th Cir.), *cert. denied,* 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). *See also, e.g., United States v. West,* 670 F.2d 675 (7th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2944, 73 L.Ed.2d 1340, and *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). Indeed, this court applied the slight evidence standard in ruling on the *Santiago* proffer in the previous trial in this case. *See Sims,* 808 F.Supp. at 623. As the government acknowledges, however, the slight evidence standard, as an appellate review standard of a guilty verdict on a conspiracy charge, has been rejected and replaced by the substantial evidence standard. *United States v. Durrive,* 902 F.2d 1221, 1225–29 (7th Cir.1990). And Judge Rovner, while a judge of this district, applied the substantial evidence standard of *Durrive* to the Rule 801(d)(2)(E) *Santiago* ruling on the participation prong. *United States v. Cargo,* No. 92 CR 442, 1992 WL 206280, at *1 (N.D.Ill. Aug. 17, 1992).

There are at the very least good arguments for believing that the Seventh Circuit would now reject a slight evidence standard for a *Santiago* ruling on the participation prong. First, in *Durrive,* the court noted an 801(d)(2)(E) case as an example of cases applying the slight evidence standard. *See Durrive,* 902 F.2d at 1226 (citing *United States v. Gironda,* 758 F.2d 1201, 1217 (7th Cir.), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985)). Accordingly, one might think of slight evidence for *Santiago* purposes as being carved away by the same knife that carved slight evidence away for appellate review of jury verdicts. Second, the Seventh Circuit's rejection of the slight evidence standard for appellate review was so enthusiastic that clinging to the standard for 801(d)(2)(E) seems risky. *See Durrive,* 902 F.2d at 1225–26. A third reason has become more clear since this court's 1992 opinion that applied the slight evidence standard: that the Seventh Circuit has not used it in reciting the 801(d)(2)(E) burden, arguably overruling *Shoffner* on this point, although silently. The most recent statements from the Seventh Circuit this court has found on this point have applied a preponderance of the evidence standard for all three prongs. *See United States v. Perez,* 28 F.3d 673, 677 (7th Cir.1994); *United States v. Ford,* 21 F.3d 759, 763 (7th Cir.1994); *United States v. Wesson,* 33 F.3d 788, 796 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 668 (1995). And the government presents no recent Seventh Circuit precedent to the contrary. Finally again, at least as a form of intellectual comfort, Judge Rovner, while a judge of this district, rejected the

slight evidence standard on the participation prong in light of the Seventh Circuit's rejection of the standard on appellate review. *Cargo,* No. 92 CR 442, 1992 WL 206280, at *1.

So assuming a slight evidence standard does not apply for 801(d)(2)(E) determinations, the next question becomes what replaces the standard. One answer is the substantial evidence standard applied in *Durrive.* This court's opinion in *United States v. Messino,* 855 F.Supp. 973, 975 (N.D.Ill.1994), could be read toward that end. However, again, there are at the very least good arguments not to apply the substantial evidence standard to the participation prong. First, as the government notes, the standard is explicitly used by the Seventh Circuit for review of jury verdicts. The task of appellate review is far different from the task of trial court evidence management in the first instance. The Seventh Circuit made this point in *Durrive* by cautioning district courts not to undermine the government's burden by instructing juries based on a substantial evidence standard. *See Durrive,* 902 F.2d at 1229 n. 6. It follows that it might be similarly inappropriate to apply a substantial evidence test, designed for appellate review, to a lower court's admissibility determination. Second, it is not all that clear whether "substantial evidence" is as substantial as it sounds. Because it is an appellate standard, substantial evidence would tend to be a lenient standard for factual support. And, at least in review of administrative agency decisions, substantial evidence "may be less than a preponderance of the evidence." *Freeman United Coal Mining Co. v. Stone,* 957 F.2d 360, 362 (7th Cir.1992).

A third, and most promising, alternative is to apply the preponderance of the evidence standard to all three *Santiago* ruling prongs. The first and most persuasive reason for such a standard is that the Seventh Circuit trend is in that direction, as previously demonstrated. Another reason for applying such a standard is that the *Durrive* court's analysis favors simplicity, not bending over backwards to create fine distinctions among the standards for various prongs. The most clear and simple approach is to apply the preponderance of the evidence standard to all three 801(d)(2)(E) prongs.

All that said, if this area of the law needs the perfect test case for clarification, this case is not the one. The reason this case does not squarely present the issues discussed is that the government's evidence that Rufus Sims was a member of the charged conspiracy is nothing short of overwhelming; as explained in somewhat more detail below, the government meets just about any burden one could imagine. Whether the burden is slight, preponderant or substantial evidence, and whether substantial means more or less than a preponderance, the government meets all three prongs.

## II. DISCUSSION AND PRELIMINARY FINDINGS

The government is right to point out that the court on October 23, 1992, made a *Santiago* ruling covering defendant Rufus Sims. Since that date, three developments make the case for 801(d)(2)(E) admission stronger: (1) the court has actually heard much of the government's case before; (2) a jury has found, at least for one codefendant, that a conspiracy existed; and (3) codefendant Richard Goldstein has appeared before this court making a post-sentencing proffer that incriminated Rufus Sims, as well as bolstering the general allegation of conspiracy.

Count One alleges that all defendants, plus Tim Patterson and others known and unknown to the Grand Jury either conspired to distribute narcotics or aided and abetted the conspiracy, an overarching charge incorporating the allegations of all other counts, Counts Two through Nineteen. (Indictment Count I, ¶ 21, at 9.) The Count One conspiracy is also alleged as "Racketeering Activity Number 1" in Count Two, a Racketeer Influenced and Corrupt Organizations Act count. (Indictment Count II, at 14–15.) Count Eight charges a conspiracy to conceal illegal proceeds and to illegally structure transactions in order to impede the United States in its law enforcement. The court turns to the three findings it must make for Rule 801(d)(2)(E) admission.

## A. *Existence of the Conspiracy*

On the prong of existence of a conspiracy, the government has met its burden. The court previously discussed the government's burden in its 1991 opinion. *See Sims,* 808 F.Supp. at 622–23. Therein, this court noted that the government proffered evidence that members of the conspiracy

(1) obtained supplies of narcotics; (2) mixed and repackaged the narcotics into user-size packets to sell to customers; (3) delivered the narcotics to distribution outlets and picked up cash proceeds from prior sales; (4) obtained and operated individual narcotics distribution outlets, including renting the apartments used for narcotics distribution, hiring workers to staff those outlets, overseeing the performance of those workers, and providing security for the operation of those distribution outlets and the conspiracy in general; (5) punished workers and others who threatened the security of the conspiracy by methods including murder and beating; (6) obtained and maintained large quantities of firearms, including semiautomatic and automatic weapons and grenades, to provide security for the conspiracy; and (7) concealed from the Internal Revenue Service, the Drug Enforcement Administration, and other law enforcement agencies, the income from and assets obtained by the proceeds of the illegal distribution of narcotics.

*Id.* And, as previously discussed, since then the government's position has improved. The government's evidence of a conspiracy includes photographs, cashier's checks, testimony, and narcotics records. (Government's Proffer at 15–16.) Additionally, as the government notes, in numerous guilty pleas, codefendants have identified a conspiracy.

## B. *Rufus Sims's Participation*

Again, this court's previous discussion of the evidence of Rufus Sims's participation still holds, and in fact has strengthened. The proffered evidence originally included statements of Michael Stevens, Shawn Baker, Maurice Harmon, and William Burch. *Sims,* 808 F.Supp. at 623–24. To that is added evidence the court heard at the prior trial, as well as the post-sentencing proffer of codefendant Richard Goldstein. (Government's Proffer at 16.) The court finds the government has met its burden regarding Sims's own participation.

## C. *Statement Made in Furtherance of the Conspiracy*

This court previously noted the Seventh Circuit guidance available on the issue of whether a statement is in furtherance of a conspiracy, citing *Garlington v. O'Leary,* 879 F.2d 277, 283 (7th Cir.1989):

A coconspirator's statement satisfies the "in furtherance" element of Rule 801(d)(2)(E) when the statement is "part of the information flow between conspirators intended to help each perform his role." *United States v. Van Daal Wyk,* 840 F.2d 494, 499 (7th Cir.1988). Statements that further the objectives of a conspiracy can take many forms, including statements made to recruit potential coconspirators, *see United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir.), *cert. denied,* [484 U.S. 958,] 108 S.Ct. 356, 98 L.Ed.2d 381 (1987); statements seeking to control damage to an ongoing conspiracy, *see Van Daal Wyk,* 840 F.2d at 499, statements made to keep coconspirators advised as to the progress of the conspiracy, *see United States v. Potts,* 840 F.2d 368, 371 (7th Cir.1987); and statements made in an attempt to conceal the criminal objectives of the conspiracy, *see United States v. Kaden,* 819 F.2d 813, 820 (7th Cir.1987); *United States v. Xheka,* 704 F.2d 974, 985–86 (7th Cir.), *cert. denied,* 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983).

### *CONCLUSION*

■ After reviewing the proffer submitted by the government, this court finds that the government has established, by a preponderance of the evidence, that the coconspirator statements at issue fall within the scope of Rule 801(d)(2)(E) of the Federal Rules of Evidence. Based upon the written *Santiago* proffer, it is more likely than not that a conspiracy existed, that defendants participated in the conspiracy, and that statements were made "during the course of and in

furtherance of" the conspiracy. As a preliminary matter therefore the statements are not hearsay and thus are admissible against defendant Rufus Sims. In this circuit, however, the trial judge has the option of conditionally admitting the coconspirator declaration evidence subject to actual proof of these matters at trial. *See Santiago*, 582 F.2d at 1131; *Cox*, 923 F.2d at 526. The court exercises that option here.

Accordingly, for the reasons stated above, the government's evidentiary proffer as to coconspirator statements is conditionally admitted under Rule 801(d)(2)(E) of the Federal Rules of Evidence, subject to proof at trial.